JOSEPH B. WATTS, APPELLANT, VS. NEAL HENDRY, AP-
PELLEE.

1. A. sold to B. one hundred cattle of named age and part of a particular
stock then running upon the range.  B. paid the price agreed upon, and
A. gave to him a delivery order upon his (A.'s) agent.  C., with a know-
ledge of these facts, subsequently purchased of A. the balance of the
particular stock.  He (C.) took possession of the entire stock, and ad-
mitted to B. his right of property in and possession to the one hundred
cattle :  *Held*, That C., upon setting up a claim of exclusive ownership
to the one hundred cattle, and upon denial of the right of B., was liable
in trover to B.

This is an action of trover brought by the appellant
against the appellee in the Circuit Court for Madison coun-
ty.  There was a judgment for the defendant upon the
merits, from which this appeal is prosecuted.

The case is stated in the opinion of the court.

*Baker*, *Call* and *Whitner* for Appellant.

It is a rule in law that the general property in personal
chattels creates a constructive possession, so that the owner
may bring trover or trespass.  1 Chitty's Pl., 152 ; 7 Cowen,
329 ; 2 Saund., 873.

When the sale is completed, the vendor is only bound to
deliver the subject matter upon tender of payment ; if he
refuse to do so, the vendee may take the goods in trover.
Story on Sales, 388.

When the goods are such as to render manual delivery
difficult or impracticable, or inconvenient, in such case any
formal act is sufficient which places the goods in the actual
power of the purchaser, or which impliedly asserts that they
are his property.  Thus the transfer of the keys of a ware-
house where the goods are stored, or a receipt ticket, sale
note, bill of lading, or any type of title.  5 N. H., 371 ; 1
Hill. on Torts, 530 ; Story on Sales, sec. 311, 392.

The law only requires such delivery as is consistent with the nature of the thing sold. Story on Sales, sec. 312.

When goods are sold and not separated from the mass or bulk, it is a question whether the sale is sufficiently complete to authorize the action of trover. The rule seems to be that when everything is done that is necessary to ascertain the quantity and price, the sale is complete. 2 Saund., 873; 1 Chitty's Pl., 150–2.

It has been held that a sale of cotton and hides in bales is not complete until they are weighed.

According to custom, their price and quantity are ascertained by weight and not by number.

On the contrary, it is held that a sale of flour by the barrel or corn by the bushel, and an order for their delivery, is a complete sale, and vests such right of possession in the vendee as to enable him to maintain trover. 39 Penn., 521; 3 Strob., 384; 1 Hill. on Torts, 53; 2 Iowa, 591.

In this case the quantity, quality and price even clearly ascertained, payment received, an order in writing given, nothing further remained to be done by the vendor, purchaser had a perfect right to take possession at any time. The vendor had no further legal lien on the goods. 11 East, 211; 4 Com. Law, 300.

Goods coming into possession of defendant, claimed by plaintiff, and defendant keeps them and offers to pay for them, trover will lie for recovery, as defendant thereby admits plaintiff's property in the goods and cannot afterwards deny it. 1 Miss., 71.

Sale of chattel without actual delivery gives vendee a constructive possession sufficient to maintain trespass or trover. 1 Hill., 528.

A purchaser of chattels at a sale by auction may, upon offering to comply with terms of sale, and a refusal by vendor to make delivery, maintain trover therefor. Also, when a wharfinger had promised to deliver goods upon an order

shown him before they arrived, held that plaintiff might maintain trover after their arrival. 1 Hill., 530.

These authorities, when applied to the evidence, show clearly that the property vested in the plaintiff at the time of sale by construction of law. If not, when did it vest? When Grenad sold remainder of stock? Certainly not in the Hendrys, for they bought the remainder of stock with full notice of the purchase of Watts, and after their purchase, admitted his title to the steers in writing.

The second part of the charge given by the court to the jury leaves no discretion to the jury, but assumes to settle the facts as well as the law by directing the jury that a " demand was necessary before the commencement of the suit."

The testimony shows that the defendant converted the property to his own use.

When a conversion is shown, a demand and refusal is not necessary. 10 Johns., 172; 5 Cowen, 323; 3 Wend., 406; 23 ib., 462.

Demand and refusal is only evidence of conversion, and is not necessary when conversion is proved by other testimony. 8 Com. Law R., 214.

A simple possession, with a claim of title adverse to that of the true owner, is held sufficient evidence of conversion. 2 Hill. on Torts, 98; 8 Ga., 61.

It is not necessary to show that the defendant applied the property to his own use. The assuming the right to dispose of it, or exercise dominion over it exclusive of owner's right, is a conversion. 10 Johns., 172; 7 ib., 254; 1 Chitty's Pl., 155.

In this case defendant claimed an adverse title to cattle in dispute. He assumed to exercise dominion over them to the exclusion of plaintiff's right.

*J. J. Finley* for Appellee.

It is contended for the defendant in error that the plaintiff in trover must, at the time of the alleged conversion, have

had a *complete* property, either *general* or *special*, in the cattle, and also the actual possession or the right to immediate possession. 2 Stephens, N. P., marg., 2667, 2660 ; 2 T. R., 750 ; 4 Bing. R., 106 ; 2 Saund., 47, note 1 ; 31 Ill., 120 ; 4 B. & C., 941; 1 Chitty's Pl., 148; 2 Iowa, 580 ; 48 Barb., (S. C.,) 581.

It is contended for the defendant in error that at the time of the alleged conversion, the plaintiff did not have a *complete* property, either general or special, in the one hundred head of steers, and that he had neither the actual possession nor the right to the immediate possession at that time.

That the plaintiff never had the actual possession, is so conclusively established by the proof that it does not admit of argument.

It is contended that the delivery of goods is necessary to vest the right of property in the vendee. 1 Story on Con., sec. 503 ; 2 Cr. C. C., 284.

And the first rule of law applicable to delivery, *and to which all others are subordinate,* is that no sale is complete, so as to vest an immediate right of property in the buyer, so long as anything remains to be done as between the buyer and seller. 2 Chitty on Con., sec. 800 ; 19 Barb., 416 ; 1 Par. on Con., 441, sec. 464, 3 ed.

And in order to delivery, the goods must be *identified,* *separated* and *distinguished* from all other goods, and from the bulk and mass with which they are mixed. 2 Story on Con., sec. 800 ; 8 Fla., 40–1 ; 1 Wheat., 471 ; 4 Taunt., 644 ; 5 ib., 176 ; 7 Cow., 85 ; 7 Ohio, 128 ; 20 Pick., 280.

If chattels are sold by *number, weight* or *measure,* the sale is incomplete, and the risk continues with the seller until the *specific* property be *separated* and identified. 2 Kent's Com., 496 ; 2 Story on Con., sec. 801 ; 4 Scam., 327 ; 28 Vt., 709.

And so if a man buy a quantity out of a larger bulk, (or some out of a larger number,) he does not buy it until it is separated from the rest. And there must be an acceptance

after the separation.   He must have the opportunity of refusing what the vendor may have selected.   2 Parsons on Con., 327, note, (3 ed.) ; 20 Eng. Law and Eq., 524.

As to what constitutes *actual* and *constructive* delivery, see 2 Story on Con., sec. 801, 810.

To support trover, the plaintiff must have the right to some *identical* or *specific* goods.   3 Stephens, N. P. 2661, 2665 ;  17 Serg. & R., 285 ;  5 B. & A., 654.

In a sale of goods there must be a *specific* right to some *particular* goods, *severed* and *distinguished* from others, and if there remain to be done in the contract some act to ascertain the quantity or price, the vendee cannot maintain trover until the act is done.   3 Stephens, N. P. 2677; 1 Chitty's Pl., 150 ; 15 Johns., 349.

Under the law applied to the facts in this case, it is confidently contended that the plaintiff has never been vested with a complete property, either general or special, in the cattle in dispute, and that without such property it is legally impossible that he could have the right to the immediate possession.

If the above conclusion be true, then the plaintiff cannot bring trover in this case against the defendant, but his remedy would be against Grenad, who alone was bound to deliver him the cattle.

Even if there had been delivery of the one hundred steers by Grenad to the plaintiff, the proof in the record establishes the fact that they have always been and still are running at large upon the range, and have never been in the actual possession of the defendant.

Even if it should be considered that the defendant was in possession of the cattle in dispute, and that he knew of the sale to the plaintiff, and had agreed with the plaintiff to gather them and separate them from the herd and deliver them to the plaintiff, he would in law, and upon this state of facts, have been a *bailee* of the plaintiff, and a demand

and distinct refusal would have been necessary before trover could be maintained.

Even a refusal to deliver goods on demand will not necessarily constitute a conversion, unless the party refusing have it in his power to deliver up the goods detained, and the refusal be distinctly made. 3 Stephens, N. P. 2689.

If the defendant can, upon any possible conclusion upon the facts in this case, be held liable as a *bailee*, then, as already said, a previous demand and refusal are necessary to maintain the action, because in such case the defendant would have been lawfully possessed in the first instance. 3 Stephens, N. P. 2685.

In general, some tortuous act is necessary to a conversion, and it is not sufficient to prove a mere non-feasance. 3 Stephens, N. P. 2709, 2683; 1 B. & P., 438.

Can it be possible in view of the facts presented in the record, that the defendant has never contracted to deliver the cattle to the plaintiff which he purchased from Grenad, and that the plaintiff has always neglected to gather and separate them from the herd, although urged to do so by the defendant, and that the cattle are still remaining at large upon the range, with a sufficient number of the right age still remaining to fill the contract of Grenad with the plaintiff, and that the plaintiff did not demand the cattle of the defendant before he commenced his suit? I ask, can it be possible, under this state of facts, that any court of justice can or will hold the defendant responsible for not laying aside his own business, and, at great expense of time and money, gathering and separating the cattle claimed by the plaintiff, and driving them a great distance and delivering them to him, in order to execute a contract not made by the defendant with the plaintiff, but by Grenad, a third party?

To my mind, the proposition is altogether contrary to every sound and correct conception of justice.

It is therefore contended, upon the authorities cited, and upon the facts presented by the record in this case :

1. That at the time of the alleged conversion, the plaintiff did not have that complete property, either general or special, in the cattle in dispute as would enable him to maintain trover against the defendant.

2. That having neither a general nor special property in the cattle, he could not have the right to the immediate possession.

3. That the defendant has never been in the actual possion of the cattle, they still running at large upon the range, and as much within the power of the plaintiff as the defendant.

4. That, under all the circumstances, the defendant is not and cannot be guilty of a wrongful conversion.

5. That even if the facts warranted the conclusion that the defendant was in possession of the cattle, and had, with the consent of the vendor, and with the knowledge and consent of the plaintiff to deliver the cattle to the latter, and had thus become the *bailee* of the plaintiff, trover would not lie against the defendant without a demand and refusal.

6. That upon the whole of the law and the facts in the case, the charge of the judge below and the verdict of the jury were right, and the judgment of the court below should not be disturbed.

WESTCOTT, J., delivered the opinion of the court.

This was an action of trover brought by appellant in the Circuit Court for Madison county. The facts are as follows :

Benjamin O. Grenad sold to appellant, (plaintiff in the court below,) Watts, in July, 1862, one hundred two-year old steers for one thousand dollars, which sum was paid by plaintiff. The cattle sold were a part of the " Lester stock," which stock numbered about four thousand. The cattle were running at large in the range, and the vendor (Grenad) addressed the following delivery order to one of his stock minders :

" Mr. Vaughn—Sir :—I have sold Joseph B. Watts one hundred two-year old steers last spring, and you will see them gathered and delivered, and he has paid me the amount for the same, $1,000, this the 22d July, 1862.

" Witness, J. M. Hendry.        " Benj. O. Grenad."

Upon the next day the vendor (Grenad) addressed a similar order to Vaughn. The one hundred head of cattle were never separated from the herd of four thousand, and there has never been any identification of the precise one hundred in which the vendee (Watts) has a property under this sale. On the 4th of August, 1862, Grenad sold the balance of the " Lester stock " to J. M. Hendry, and by virtue of subsequent sales, the property in the balance of the stock, exclusive of the one hundred sold Watts, became vested in Neal Hendry, the defendant, he assuming the liability for plaintiff's claim and having full knowledge of the facts recited as to the sale. The defendant thus became possessed of the entire " Lester stock," among which were the one hundred purchased by plaintiff as aforesaid. On the 23d of October, 1862, the defendant and John M. Hendry joined in a note to the plaintiff in the language following :

Madison C. H., October 23, 1862.

Mr. Joseph B. Watts—Dear Sir :—As you hold a claim for one hundred steers, two years old last spring, out of the stock known as the " Lester stock," owned by us, and as several months have passed since you bought them and you have not yet got said cattle out of the stock, and to prevent any difficulty in the future, and as we are not willing to let them run and run the risk of the cattle and then allow you to claim the full number and increase of age, you are hereby notified to drive them out or alter the mark and brand by the 25th day of December next, or this notice shall be a bar to any claim held by you or any other person in your name.        Yours respectfully,

Neal Hendry,
John M. Hendry.

It is not made to appear that plaintiff paid any attention to this notice, and the entire stock remained on the range unseparated.   Since this notice, the defendant, believing that it was a bar to the plaintiff's right, has exercised dominion and control, to the exclusion of the plaintiff, over the entire Lester stock, including of course the one hundred head of the plaintiff's, and has made sales of a number of this stock at various times.   Under this state of facts, plaintiff brings an action of trover, and upon this evidence substantially there is a verdict and judgment for the defendant, and the plaintiff prosecutes an appeal to this court.

There are several errors assigned, but we think it necessary to consider only the last assignment, which is " that the court erred in refusing to grant the motion for a new trial, the verdict being clearly contrary to the law and the evidence."

The appellee here relies upon two points to sustain the judgment :

First.  It is contended that plaintiff did not have a right of possession to the cattle, as there remained something to be done upon the part of the vendor which was necessary to complete the sale, viz : the gathering, separating and delivery of the one hundred head of cattle ; that the separation and identification of the one hundred cattle was necessary before the vendee could acquire a property in any specific chattel, or a right to the possession of any specific chattel, which it is claimed is necessary to maintain trover.

Second.  It is contended that " even if it should be considered that the defendant was in possession of the cattle in dispute, and that he knew of the sale to the plaintiff, and had agreed with the plaintiff to gather them and separate them from the herd and deliver them to the plaintiff, he would in law, and upon this state of facts, have been a bailee of the plaintiff, and a demand and distinct refusal would have been necessary before trover could be maintained."

As to the last point, we remark that when a person as-

sumes to exercise control and dominion over the chattel of another in opposition to and with a knowledge of the right of the true owner, as in this case, it makes no difference whether he is in possession as bailee or otherwise; it is a conversion, and no demand or refusal is necessary. Demand and refusal is at most nothing more than evidence of a conversion, and when it is otherwise proved, this particular character of evidence is unnecessary. Because the defendant may have been a bailee, does not render it impossible for him to have been guilty of a conversion in some other way except by resisting the demand of the true owner. Suppose he sells the chattel, or, as in this case, he notifies the owner to come and get his property, and if he does not that he will deny his ownership and lay claim to the property, and does actually claim it as his own, we have here a conversion independent of demand, and, as a matter of course, a demand is unnecessary.

The only witness examined to the point in this case states that the defendant has, since the notice, exercised control and ownership, to *the exclusion of plaintiff*, over the whole mark and brand of the Lester stock. If this be true, and there is no conflict in the evidence upon the subject, we are entirely satisfied that the case, so far as the matter of conversion was concerned, is fully made out, and that the evidence and law is plainly with the plaintiff. What acts may be done by a party coming lawfully into the possession of the property of another, and his precise duty in reference to it, is fully discussed in the preceding case of Robinson vs. Hartridge, and we deem it unnecessary to go over the same ground here. As to the first ground upon which defendant seeks to sustain the judgment, we think it may be admitted, for the sake of argument, that if the defendant had remained passive and had made no acknowledgment of property in the plaintiff, that the defence would have been good and it would not affect this case. A different case is presented when defendant admits the property of the plaintiff in cattle of a given age

and number in his possession. After this he is estopped from saying that plaintiff has no property or right of possession because of a want of identification and separation in the original sale.

In Steward vs. Dunkin, 2 Camp., 344, it was expressly held by Lord Ellenborough that a warehouseman who, on receiving an order from the seller of malt to hold it on account of the purchaser, gave a written acknowledgment that he so held it, could not set up as a defense in trover for not delivering it to the purchaser, that the property in the malt sold was not transferred until it was remeasured. Lord Ellenborough there says : " Whatever may be the rule between buyer and seller, it is clear the defendants cannot say to the plaintiff, 'The malt is not yours,' after acknowledging it to be his." Haws and Another vs. Watson and Another, 2 Barn. & Cress., 540. A. sold to B. a quantity of tallow at so much per cwt., and gave a written order to the wharfinger to weigh, deliver, transfer and rehouse the same. B. sold it to C., giving C. an acknowledgment of the wharfinger that he had transferred it to C. B. became insolvent, and A. gave notice not to deliver to B. It was held that after the wharfinger's acknowledgment, they could not set up as a defence a right in the original vendor to stop in transitu because something remained to be done on the part of the seller to make a perfect delivery.

The vendor, Grenad, in such a case as this, in the event the price had not been paid, would have perhaps had a seller's lien, as there was no such surrender of actual possession as would have divested it, but this is not the case here.

Lord Ellenborough in Hanson vs. Meyer, 6 East, 614, says that " if anything remains to be done on the part of the seller as between him and the buyer before the commodity purchased is to be delivered, a complete present right of property has not attached in the buyer, and of course this action, (trover,) which is accommodated to, and depends upon such perfect right of property, is not maintainable." This case

was between the vendor and vendee, where the vendee be-
came bankrupt before payment or delivery, and it seems to
have given the general rule, both in England and the United
States, for determining when and under what circumstances
as between buyer and seller, where the price was not paid, a
present right of property and possession attaches, so as to
maintain trover.    There is a great difference, however, be-
tween cases of this character, *where no price has been paid*,
and where, upon principles of equity in cases of incomplete
sales, a seller's lien, or a right of stoppage in transitu is per.
mitted to operate for the protection of the vendor in cases of
insolvency or bankruptcy of the vendee, and this case.    In
the case just referred to, Lord Ellenborough held that it was
essential under the terms of the agreement that the chattel
should be weighed before the price could be ascertained or
a delivery be made, and no such complete right of property
had vested in the vendee as to enable him to maintain tro-
ver.    Most of the cases cited by appellee are between the
vendor and vendee, or the creditors of the vendee, where the
price had not been paid, and the vendor remaining in pos-
session availed himself of the omission to weigh, measure or
select, or of his right of stoppage on account of the insolven-
cy of the vendee and non-payment of the price.    In this case
the price had been paid, and the vendor, by giving a delivery
order, acknowledged upon his part that he held the cattle
subject to vendee's order.    If the property remained in the
vendor or he was entitled to the possession *in his own right*,
after payment of the price and the execution of the delivery
order, it would present the strange case of a party having
property in a chattel after he had been paid for it, and after
he had acknowledged the right of possession to it in another.
Here the vendor and vendee plainly show their intention to
pass the property, and the subsequent dealings of the defen-
dant with these parties show that that was his understanding
of the matter.    As remarked by the Court of Appeals of
New York, we may safely say that while many of the au-

thorities may suggest a doubt whether a title passes upon a mere sale of a part from a mass without a separation or identification of that part, yet if it be clear that it was the intention and design of the parties that the title should pass, no decision announces the extreme doctrine that there is a legal impossibility in the way of accomplishing that design.   These views are fully sustained by the decision of the Supreme Court of Massachusetts in 20 Pick., 284, and in 13 Pick. 182, by the court of appeals of New York, in 19 New York' 330, by the Supreme Court of Maine, in 37 Maine, 418' and by the court of appeals of Virginia, in 6 Rand., 473. In the last case there was a sale of a portion of a lot of flour; the vendor took the draft of the vendee in payment for the flour, gave a receipt for the price and an order to the vendee upon the keeper of the warehouse where it was stored.   Say the court, " the vendee would hardly have paid his money without getting what he considered equal to an actual delivery; he got the order directing the warehouseman to deliver him one hundred and nineteen barrels of flour of specified brands.   Looking at this contract as the parties did at the moment of making it, can we doubt for an instant that they considered it complete, that each party had done all that he had to do with it ?   And the intention of the parties we know is of the essence of contracts.   This seems the common sense practical view of the subject, and it is fully supported by the law."   These remarks may well be applied to this case.   In reference to the subject of delivery in this case, we deem it proper to remark that upon a sale of cattle upon the ranges, wandering hither and thither in immense herds, and often remaining for a term of years in inaccessible swamps, it may not be the custom to immediately separate the number sold from a large herd or stock, but to wait until some particular season when they are driven up.   If there be such a custom, it would have great weight in determining the *intentions of the parties* in contracts of this character. In such a case, we would not be inclined to apply with rigid

strictness this rule of the common law, applicable for the most part to inanimate chattels, or to animate chattels capable of easy identification, and which it was always the custom to weigh, measure, separate or identify, before the sale was considered complete. We regard this case as much stronger than most of the cases last cited, because defendant here admitted the property and right of possession of the plaintiff. It falls more clearly within the principle of the cases reported in 2 Camp, 344, 2 Barn. & Cress., 540, and the like cases alluded to in the subsequent portion of this opinion.

In this case the defendant purchased the entire "Lester stock" knowing that plaintiff had *purchased and paid for a certain number of a certain age of this stock,* and with this knowledge defendant addresses plaintiff a notice advising him that he knew that he, plaintiff, had purchased the cattle several months before, complaining that plaintiff has not moved the cattle, (thereby admitting his right so to do,) and notifying him to drive them out by a given time, or in the event he failed, that the notice should be a bar, &c. Here is a clear admission by defendant that he was at this time possessed of the cattle which are the subject of this action, and here is an express acknowledgment of property in the plaintiff in the cattle, and an invitation to come and take his (plaintiff's) property thus acknowledged to be in his (defendant's) possession.

In the case of Gillet vs. Hill, 2 Crompton & Meeson, 2, it appeared that plaintiff had purchased flour of one Orbell, taking an order upon defendants for the delivery of twenty sacks of flour. This order was presented to defendants' foreman, who said they had not more than five sacks to spare, and they might have that. Defendant's clerk took the order and filed it. The defendants delivered to plaintiff five sacks upon another order the same day, and on the next day upon application for the balance, they said that plaintiff should have it as soon as they got any. Shortly after this another application was made, and defendants replied that they had

no flour of Orbell's to deliver. It was objected for the defendant that no specific sacks of flour had been selected or appropriated so as to vest a property in the vendee, and that trover was not maintainable. Plaintiff contended that the acceptance of the delivery order for twenty sacks was a virtual appropriation of that quantity to the plaintiff's use.

The question of acceptance was left to the jury, and there was a verdict for plaintiff. There was a rule for new trial upon which Vaughn B. said, " The defendants having accepted the order, admit the plaintiff's right to call upon them to deliver twenty sacks of flour. If they were not in a condition to comply with the order, they should have communicated that fact when the order was delivered. But then it is said that the defendants have not appropriated any *particular* sacks, and several cases have been cited to this effect. In all those cases, however, if they are examined, it will appear that it was held essential that certain acts should be done, as weighing, &c., before the property vested, and as these acts had not been done, the plaintiff failed to prove an absolute property in himself. Here, however, the defendants admitted that they had twenty sacks in their possession, (the property of Orbell,) and they afterwards refuse to deliver fifteen of the number. I think there is sufficient evidence of property possession and conversion to sustain this form of action."

So we think in this case defendant cannot set up that certain acts were necessary to pass the property as between vendor and vendee, when he has admitted generally the property of the plaintiff in the cattle.

The value of cattle is as frequently estimated by age as in any other way. A conversion of a given number of a certain age is here established, and we see no difficulty in the case. On the other hand, a judgment for the defendant gives him a property in the cattle, and the plaintiff is deprived of his property without a remedy, for if trover is not

maintainable here, it is our opinion, as at present advised, that the plaintiff is remediless, and that a party who acquired possession of property with full knowledge that it had been purchased and paid for by another, and who had admitted the general property of that other, will be permitted to convert that property to his own use at the expense and loss of the true owner.

The judgment of the court below is in conflict with the law as applicable to the true state of facts in this case, and no one can doubt that its consequence is to give one man the property of another without any the least compensation.

The judgment is reversed and a new trial is awarded.