362 So.2d 275 (1978)
VILLAGE OF EL PORTAL, Appellant,
v.
CITY OF MIAMI SHORES, Florida, Appellee.
No. 51233.
Supreme Court of Florida.
May 31, 1978.
Rehearing Denied September 11, 1978.
Joseph A. Wanick, Miami Beach, for appellant.
Alan R. Dakan of High, Stack, Davis & Lazenby, Miami, for appellee.
ADKINS, Justice.
We have for review on direct appeal a final judgment of a trial court which passed on the constitutional validity of the Uniform Contribution Among Tortfeasors Act, Section 768.31, Florida Statutes (1975). We have jurisdiction. Article V, Section 3(b)(1), Florida Constitution.
The parties to this action, The Village of El Portal and the City of Miami Shores, are adjoining municipalities. During the early morning hours of December 23, 1973, Miami Shores police officers discovered evidence of a forced entry into a building located in Miami Shores. Pursuant to an informal mutual aid agreement, the Miami Shores police radioed for assistance from the Dade County sheriff's office and the Village police. Both responded immediately.
Since the police activity was transpiring in Miami Shores, the ranking Miami Shores police officer was in command of the other officers who had arrived on the scene of the burglary. Suspecting that the burglars were armed and still inside the building, the *276 ranking Miami Shores officer ordered a Village police officer to return to his headquarters and obtain some tear gas bombs. Upon his return, the Village police officer was ordered to throw a tear gas bomb into the building.
The tear gas bomb used, however, was one designed for outdoor use only. The bomb burst into flames, resulting in substantial fire damage to the building and a gun shop and ceramics store housed therein. Subsequently, the owners of the gun shop, the ceramics store, and the building brought suit against Miami Shores, the Village, and Federal Laboratories, Inc., the manufacturer of the tear gas bomb. The suits were consolidated for trial, and the jury returned a verdict against all defendants in the amount of $126,500.
Thereafter, Miami Shores and Federal Laboratories, Inc., each paid their one-third share of the judgment. The Village, however, refused to pay any more than $25,000, which was the limit of public liability insurance carried by the Village. Miami Shores then paid an additional $17,403, which represented the difference between the $25,000 paid by the Village and its full one-third share.
Since Miami Shores paid more than its pro rata share, it filed a petition for an order of contribution against the Village pursuant to the Uniform Contribution Among Tortfeasors Act, Section 768.31, Florida Statutes (1975). The Village moved to dismiss the petition on the ground, inter alia, that Section 768.31 was unconstitutional in its application to municipal corporations. The circuit court denied the motion and entered final judgment in favor of Miami Shores. From that final judgment the Village brings this appeal.
The Village's first contention is simply that the Act does not apply to municipal corporations. Its argument revolves around the following language of Section 768.31:
(2) RIGHT TO CONTRIBUTION. 
(a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them... . [Emphasis supplied.]
Essentially, the Village argues that, by using the word "persons," the Legislature never intended the Act to apply to municipal corporations. We disagree.
The term "persons" when used in a legislative enactment may mean and include municipal corporations. Such a meaning, however, is subject to legislative intent "as it is expressed or as it may be gathered from the purpose of the act, the administrative construction of it, other legislative acts bearing upon the subject, and all the circumstances surrounding and attendant upon it." City of St. Petersburg v. Carter, 39 So.2d 804, 805 (Fla. 1949). On numerous occasions, this Court has considered municipal corporations to be within the contemplation of the Legislature when it referred to "corporations" or to "persons" in a particular statute. See Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957); Parker v. City of Jacksonville, 82 So.2d 131 (Fla. 1955); City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744 (1932); City of Sebring v. Avant, 95 Fla. 960, 117 So. 383 (1928). All of these cases illustrate that the question is solely one of legislative intent and must be resolved by taking into account the totality of the circumstances surrounding the enactment of the particular statute involved.
After reviewing the Act under consideration here, we are persuaded that the term "persons" includes municipalities. The legislative purpose behind the enactment of Section 768.31 was to provide for a right to contribution among all joint tortfeasors in order to eliminate the unfairness of the common law rule. From a reading of the entire Act, we must conclude that the Legislature was concerned not with the status of the defendants in a tort action, but rather with their relationship as joint tortfeasors. Prior to the enactment of Section 768.31, this Court had consistently recognized that a municipal corporation could *277 be a tortfeasor. See, e.g., Hargrove v. Town of Cocoa Beach, supra. We must assume that the Legislature was aware of this possibility and, thus, we find it to be significant that the Legislature chose not to specifically exclude municipalities from the operation of the Act.
Another indication of the legislative intent to include municipalities within the scope of Section 768.31 can be found by examining the Waiver of Sovereign Immunity Act, Section 768.28, Florida Statutes (1977). That statute waives sovereign immunity from tort claims for all governmental entities, including municipalities, and provides that these governmental entities shall be liable for torts "in the same manner and to the same extent as a private individual under like circumstances." Section 768.28(5), Florida Statutes (1977).
The Waiver of Sovereign Immunity Act was passed during the 1974 legislative session. Chapter 74-235, Laws of Florida. The Uniform Contribution Among Tortfeasors Act was enacted one year later. Chapter 75-108, Laws of Florida. Since Section 768.28 equates municipal corporations with all other private individuals for purposes of tort liability and since that statute was passed during the legislative session immediately prior to the enactment of Section 768.31, we are persuaded that the Legislature intended to include municipal corporations when it used the term "persons" in the later enactment. For the reasons expressed, we hold that municipal corporations are subject to the Uniform Contribution Among Tortfeasors Act.
We now turn to the Village's constitutional assault on Section 768.31. Although the Village raises six separate arguments, we find that only one requires extensive discussion. The Village contends that Section 768.31, as applied to the facts of this case, affects vested rights retroactively in violation of the Due Process Clauses of the Florida and United States Constitutions. In order to understand this argument, a brief recitation of the time sequence in this case is necessary.
The events which gave rise to the tort action in this case occurred on December 23, 1973, and the litigation against Miami Shores, the Village, and Federal Laboratories, Inc., was commenced on August 29, 1974. Section 768.31 became law on June 13, 1975, and was in effect prior to final judgment being entered against the three defendants. Section 768.31(7) provides:
(7) PENDING CAUSES OF ACTION.  This act shall apply to all causes of action pending on June 12, 1975, wherein the rights of contribution among joint tortfeasors is involved and to cases thereafter filed.
Thus, if this provision is constitutionally valid, the Act would apply to the present case and the Village would be liable for contribution. The Village asserts that the Act is unconstitutional because it affects substantial rights by abrogating the common law rule of no contribution and by creating a new cause of action in relation to events which occurred prior to the passage of the statute. We disagree.
A retroactive provision of a legislative act is not necessarily invalid. In McCord v. Smith, 43 So.2d 704 (Fla. 1950), this Court stated that retrospective statutes are only constitutionally defective:
... in those cases wherein vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, in connection with transactions or considerations previously had or expiated.

Id. at 709.
Thus, the issue in this case is whether Section 768.31 affects vested rights or establishes a new obligation or duty. We hold that it does not.
Initially, we note that there are numerous decisions on this issue in other states which have adopted the Uniform Contribution Among Tortfeasors Act. The authorities are divided on this issue and neither line of cases establishes what could be termed a majority rule. One line of authority holds that the act affects substantial rights by abrogating the common law rule of no contribution, and, therefore, the act *278 cannot be applied retroactively. See, e.g., Massey v. Sullivan County, 225 Tenn. 132, 464 S.W.2d 548 (1971); Commercial Casualty Insurance Co. v. Leonard, 210 Ark. 575, 196 S.W.2d 919 (1946); Distefano v. Lamborn, 7 Terry 195, 81 A.2d 675 (Del. 1951). The other line of cases hold that the act is, in essence, a remedial measure which affects only the remedies available in a cause of action which already exists and, thus, the retroactive application of the act does not violate the due process clause. See, e.g., Augustus v. Bean, 56 Cal.2d 270, 14 Cal. Rptr. 641, 363 P.2d 873 (1961); Smith v. Fenner, 399 Pa. 633, 161 A.2d 150 (1960); Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 102 A.2d 587 (1954); First National Bank v. Steel, 136 Mich. 588, 99 N.W. 786 (1904). We find this latter line of authority to be the better reasoned position.
In Augustus v. Bean, supra, the Supreme Court of California held that the Uniform Contribution Among Tortfeasors Act could constitutionally be applied to require contribution in a situation where the accident giving rise to the tort liability predated the passage of the act. In reaching that decision, the court reasoned:
As of the time of the accident a person did not have a vested right at common law to avoid paying for the consequences of his negligence merely because there were other tortfeasors involved. After the entry of a judgment against the joint tortfeasors, each of them was liable in full until the judgment was satisfied, and, if the plaintiff chose to collect from one to the exclusion of another, this was a matter of chance rather than the result of a right which became fixed as of the time of the accident. Contribution statutes, if applied where an accident antedates their enactment, do not retroactively increase the liability existing at the time of the injury but merely provide a method by which the liability of each of the tortfeasors may be limited to his pro rata share of the judgment... . 14 Cal. Rptr. at 642-43, 393 P.2d at 874-5.
We find the reasoning of the Supreme Court of California to be persuasive.
Remedial or procedural statutes do not fall within the constitutional prohibition against retroactive legislation and they may be held immediately applicable to pending cases. See, e.g., Turner v. United States, 410 F.2d 837 (5th Cir.1969); City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); Grammer v. Roman, 174 So.2d 443 (Fla.2d DCA 1965). The Uniform Contribution Among Tortfeasors Act does not affect any vested rights of tortfeasors or create any new obligations in respect to their tort liability. Since the common tort liability was enforceable against all or any of the joint offenders at the election of the injured party, Section 768.31, by altering the common law rule of no contribution, does not increase the liability of any of the participants in the offense. The statute merely lessens the ultimate liability of each tortfeasor by providing for an equitable distribution of the common burden. Under the Act, the burden can no longer be thrust wholly on one tortfeasor when there are others who are equally or mutually liable. The statute simply changes the form of the remedy without impairing substantial rights. We hold that the Uniform Contribution Among Tortfeasors Act does not violate any constitutional provisions in its application to pending cases.
We have considered the other points raised by the Village and find them to be without merit.
The judgment of the circuit court is affirmed.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.