450 So.2d 1157 (1984)
Norman SENFELD, Appellant,
v.
The BANK OF NOVA SCOTIA TRUST COMPANY (CAYMAN) LIMITED, Appellee.
No. 83-854.
District Court of Appeal of Florida, Third District.
May 1, 1984.
*1160 Robert A. Shupack and William T. Coleman, Hollywood, for appellant.
Arky, Freed, Stearns, Watson & Greer and Bradford Swing, Miami, for appellee.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
A jury returned a verdict finding by a preponderance of the evidence that Norman Senfeld wrongfully deprived the appellee, The Bank of Nova Scotia Trust Company (Cayman) Limited, of $10,000 that belonged in the Trust Company's possession and, additionally, that Senfeld knowingly obtained or used this money with an intent to deprive the Trust Company of a right to or benefit from it, or with an intent to appropriate it to his own use. Based upon the latter finding, which in effect determined that Senfeld had violated Florida's Anti-Fencing Act, more commonly called the theft statute, see §§ 812.012, et seq., Fla. Stat. (1983), the trial court, pursuant to Section 812.035(7), tripled the damages found by the jury and entered judgment against Senfeld for $30,000.[1] Senfeld appeals contending, as he did below, that (1) the Trust Company's counts for conversion, replevin and theft, having been filed more than five years after Senfeld's receipt of the $10,000 in question in 1975, were barred by the applicable statutes of limitations; (2) the theft statute, authorizing the tripling of actual damages, was enacted in 1977 and cannot be retroactively applied to a taking which occurred in 1975; (3) the Trust Company's claim under the theft statute was required to be proved beyond a reasonable doubt; and (4) it was the jury's, not the trial court's, function to triple the damages.[2] We reject Senfeld's contentions and affirm.

I.
Norman Senfeld was the President of Maccabee, a corporation whose account was managed by the appellee. In September 1975, Senfeld requested the appellee to send $10,000 to him in Miami and to debit his Maccabee account. On September 4, 1975, the appellee cabled Pan American Bank in Miami to pay the money to Senfeld and indicated that Bank of Nova Scotia, New York would cover this payment. On September 5, 1975, Pan American gave Senfeld a cashier's check and, without authority or instruction, debited the account of Bank of Nova Scotia, Toronto to cover the payment. Unaware of Pan American's anomalous act, the appellee, as originally intended, cabled its New York affiliate to cover the $10,000. When New York sent the money to Pan American, the latter bank (already whole by virtue of having debited Toronto) thought it was to pay $10,000 more to Senfeld, and on September 22, 1975, turned over another $10,000 in cash to Senfeld. At this point, Senfeld was up $10,000 and Bank of Nova Scotia, Toronto was out $10,000. In November 1978, Toronto finally solved the mystery of its $10,000 shortage, and on December 1, 1978, notified the appellee. The appellee immediately paid Toronto the money and began an investigation. In May of 1979, now assured that Senfeld owed it the money, the appellee wrote to Senfeld demanding that he return the money.[3] When Senfeld failed to respond to the demand that he return the $10,000, the appellee, in January 1981, instituted a suit for conversion, replevin and damages pursuant to the theft statute.

II.

A.
It is well settled that a conversion is an unauthorized act which deprives another *1161 of his property[4] permanently or for an indefinite time. See Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 33 So.2d 858 (1948). See also West Yellow Pine Co. v. Stephens, 80 Fla. 298, 304, 86 So. 241, 243 (1920) ("[T]he essential elements of a conversion is [sic], a wrongful deprivation of property to the owner, and neither manucaption nor asportation is an essential element thereof."); Quitman Naval Stores Co. v. Conway, 63 Fla. 253, 58 So. 840 (1912); King v. Saucier, 356 So.2d 930 (Fla. 2d DCA 1978); Charter Air Center, Inc. v. Miller, 348 So.2d 614 (Fla. 2d DCA), cert. denied, 354 So.2d 983 (Fla. 1977); International Mail Order, Inc. v. Capital National Bank of Miami, 192 So.2d 287 (Fla. 3d DCA 1966); Goodrich v. Malowney, 157 So.2d 829 (Fla. 2d DCA 1963); General Finance Corp. of Jacksonville v. Sexton, 155 So.2d 159 (Fla. 1st DCA 1963); Armored Car Service, Inc. v. First National Bank of Miami, 114 So.2d 431 (Fla. 3d DCA 1959). Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred. But while a demand and refusal constitute evidence that a conversion has occurred, it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown. Anderson v. Agnew, 38 Fla. 30, 20 So. 766 (1896). See also Watts v. Hendry, 13 Fla. 523 (1869-71); Robinson v. Hartridge, 13 Fla. 501 (1869-71); Mabie v. Tutan, 245 So.2d 872 (Fla. 3d DCA 1971); Goodrich v. Malowney, 157 So.2d at 832 ("The purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return it in an action for conversion is to show the conversion. The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made."). Thus, the essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal.[5]
In the present case, the jury would have been justified in finding from the evidence that although Senfeld came into possession of the money in 1975, his intent to deprive the Trust Company of the property was not formed until 1979, when the Trust Company's demand for the return of the property went unanswered. Since the special verdict form submitted to the jury with Senfeld's acquiescence did not require the jury to state when the conversion occurred, the verdict may be upheld against the attack that the action for conversion or theft was limitations barred by simply presuming that the jury found the conversion occurred *1162 in 1979.[6]See Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978).
But even if, arguendo, the evidence indisputably showed that the conversion occurred in 1975, there is yet another theory to justify the jury's implicit finding that the Trust Company's action for conversion was not limitations barred. Over Senfeld's objection, the jury was charged that the statute of limitations would begin running from the time the wrongful act was discovered or should have been discovered. By finding for the Trust Company, the jury could have found that discovery occurred or should have occurred within four years of the filing of suit. Senfeld contended below and contends here that the Trust Company's ignorance of the existence of the conversion did not postpone the running of the statute of limitations and that, as a matter of law, the Trust Company's time for filing suit for conversion expired in September 1979, four years after Senfeld received the money. We reject this argument as well.
While it is true that "mere ignorance of the facts which constitute the cause of action will not postpone the operation of the statute of limitations," Franklin Insurance Co. v. Tharpe, 131 Fla. 213, 214, 179 So. 406, 407 (1938), it is equally true that where the plaintiff's ignorance is blameless, the cause of action will not arise until the plaintiff knows or is chargeable with knowledge of an invasion of his legal right, Miami Beach First National Bank v. Edgerly, 121 So.2d 417 (Fla. 1960) (action against bank for payment on a forged endorsement does not arise until maker receives, or by exercise of reasonable business care would have received, notice that endorsement forged); City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954) (medical malpractice action does not arise until notice of consequences or negligent act); see Franklin Insurance Co. v. Tharpe, 179 So. 406.
Senfeld suggests, however, that this discovery rule (that is, that the plaintiff knew or should have known of his cause of action) is limited to those actions, such as products liability or fraud, where the statute of limitations expressly provides that the period within which the action must be brought runs from the time of discovery or constructive discovery, § 95.031(2), Fla. Stat. (1983), and that all other actions, including conversion, run from the time the cause of action accrues, that is, "when the last element constituting the cause of action occurs," § 95.031(1), Fla. Stat. (1983).
Concededly, the court in Houston v. Florida-Georgia Television Co., 192 So.2d 540 (Fla. 1st DCA 1966), applied the rule of expressio unius, exclusio alterius (the application of which is here urged by Senfeld) in deciding that a cause of action for invasion of privacy ran from the time the invasion occurred, not when the plaintiff first discovered the invasion. Finding discovery language in the statute of limitations relating to fraud (§ 95.11(5)(d), Fla. Stat. (1965)), but finding no such language in the statute of limitations pertaining to an invasion of privacy action (§ 95.11(4), Fla. Stat. (1965)), the court in Houston concluded that absent a specific postponement provision, one would not be read into the statute of limitations as a whole. While Houston certainly supports Senfeld's position, reliance upon it as authority is unjustified in light of City of Miami v. Brooks, 70 So.2d 306, and Miami Beach First National Bank v. Edgerly, 121 So.2d 417, and, a fortiori, in light of the later decisions of Creviston v. General Motors Corp., 225 So.2d 331 (Fla. 1969), and Lund v. Cook, 354 So.2d 940 (Fla. 1st DCA), cert. denied, 360 So.2d 1247 (Fla. 1978). In both Brooks and Edgerly, the Florida Supreme Court applied the discovery rule to actions (negligence and contract, respectively) other than one where the statute of limitations expressly provided for the application of the rule. In Creviston, the court, relying on Brooks and Edgerly, did the same and concluded that

*1163 "From the standpoint of legal principles, the holdings in the cases above discussed appear to crystalize in favor of application of the blameless ignorance doctrine in those instances where the injured plaintiff was unaware or had no reason to know that an invasion of his legal rights has occurred. In reality, such a doctrine is merely a recognition of the fundamental principle that regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights."
225 So.2d at 334 (emphasis supplied).
Were there any doubt about the continued vitality of Houston after Creviston, such doubt was set to rest in Lund v. Cook, 354 So.2d 940, by the very same court which decided Houston. There the court held that the express inclusion of discovery language in the statute of limitations relating to certain specified causes of action (by then, products liability, fraud and professional malpractice) did not abrogate the rule of Creviston that regardless of the underlying nature of the cause of action, the cause of action accrues with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights.[7]
We conclude, therefore, that the discovery rule applied to the Trust Company's action for conversion and that there was substantial evidence to support a jury's determination, under proper instructions, that the Trust Company neither discovered nor should have discovered the conversion, even assuming such conversion occurred in 1975, until, at the earliest, 1978.

B.
Senfeld's separate argument that the Trust Company's cause of action under the theft statute is limitations barred proceeds from the premise that because the statute provides a civil remedy for a crime, rules pertaining to criminal cases apply. He concludes, therefore, that since the statute of limitations for crimes begins to run when the crime is committed or when it is complete, see State v. King, 282 So.2d 162 (Fla. 1973), without regard to when the crime is discovered, the statute of limitations began to run in 1975 when he appropriated the $10,000 to his own use.
Senfeld is mistaken in his premise. Although Section 812.035, Florida Statutes, the civil remedies section of the theft statute, is quite clearly incorporated in a statute which defines and prohibits crimes, it does not follow that rules pertaining to criminal cases apply to the civil action brought thereunder. Thus, in James v. Brink & Erb, Inc., 452 N.E.2d 414 (Ind. Ct. App. 1983), the defendant argued that in order to recover in a civil action brought under Indiana's nearly-identical theft statute, the plaintiff was required to show a violation of the statute by proof beyond a reasonable doubt, the standard of proof in criminal cases. The court rejected this argument, stating:
"[The statute] provides that a person suffering a pecuniary loss `may bring a civil action'... . If the language used in a statute is clear and unambiguous, the plain meaning of the statute will be given effect... . In enacting [the statute], the legislature conferred a right to bring a civil action; therefore, the plaintiff bears the burden generally imposed in a civil case, that of proving his claim by a preponderance of the evidence."[8]
452 N.E.2d at 416 (emphasis in original; citation omitted).
Accord, Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980) (case involving statute similar to *1164 Florida's theft statute; court referred only to rules of civil procedure to determine that summary judgment for plaintiff was properly granted); USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir.1982) (same; RICO). Cf. United States v. Cappetto, 502 F.2d 1351, 1357 (7th Cir.1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975) ("A civil proceeding to enjoin [criminal] acts is not rendered criminal in character by the fact that the acts also are punishable as crimes.").[9]
Perhaps even more compelling is the language of Section 812.035(10), which states in part:
"Notwithstanding any other provision of law, a criminal or civil action or proceeding under ss. 812.012-812.037 may be commenced at any time within 5 years after the cause of action accrues ... ." (emphasis supplied).
The Legislature's choice of "after the cause of action accrues" as the starting point for the commencement of the running of the statute of limitations is, in light of existing judicial construction of such language in civil cases, see, e.g., Creviston v. General Motors Corp., 225 So.2d 331, strong indication that it intended that the limitations period for civil and criminal actions under Sections 812.012-812.037 will commence to run in accordance with the separate rules applicable to such cases.
We conclude, therefore, that the court properly instructed the jury that the discovery rule applied to the Trust Company's civil action for theft[10] and that even assuming the theft occurred in 1975, there was substantial evidence to support a jury's determination that the Trust Company neither discovered nor should have discovered the theft until, at the earliest, 1978.

III.
Assuming, once again, that the theft, even though not discovered until 1978, indisputably occurred in 1975, two years prior to the effective date of the theft statute, Senfeld argues that the Trust Company's cause of action for theft cannot be sustained because the statute cannot be retroactively applied.[11] While it is true that in the absence of an express legislative declaration that a statute have retroactive effect, the statute will be deemed to operate prospectively only, Fleeman v. Case, 342 So.2d 815 (Fla. 1976); Thayer v. State, 335 So.2d 815 (Fla. 1976); Larson v. Independent Life & Accident Insurance Co., 158 Fla. 623, 29 So.2d 448 (1947), and that even a clear expression of retroactivity will be ignored if the statute impairs vested rights, creates new obligations, or imposes *1165 new penalties,[12]Village of El Portal v. City of Miami Shores, 362 So.2d 275 (Fla. 1978); Fleeman v. Case, 342 So.2d 815; accord, State v. Lavazzoli, 434 So.2d 321 (Fla. 1983), neither of these rules of statutory construction applies where the statute is solely remedial or procedural, Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); McCord v. Smith, 43 So.2d 704 (Fla. 1949); Department of Transportation v. Cone Brothers Contracting Co., 364 So.2d 482, 486 (Fla.2d DCA 1978), reversed, 384 So.2d 154 (Fla. 1980) ("A curative or remedial statute is necessarily retrospective in character."); Grammer v. Roman, 174 So.2d 443, 446 (Fla. 2d DCA 1965) ("Remedial statutes are exceptions to the rule that statutes do not come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes."). Cf. Village of El Portal v. City of Miami Shores, 362 So.2d 275 (remedial statute with specific retroactivity provision).
We have little difficulty in concluding that Section 812.035 is remedial in nature and thus applies retroactively.[13] The statute itself, in Section 812.037, states that "notwithstanding s. 775.021 [strict construction for crimes], ss. 812.012-812.037 shall not be construed strictly or liberally, but shall be construed in light of their purposes to achieve their remedial goals."[14] (emphasis supplied). Moreover, like statutes have been consistently construed as remedial in nature. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (triple damages under the antitrust statute); Tel Service Co. v. General Capital Corp., 227 So.2d 667 (Fla. 1969) (new penalties under usury law could be applied retrospectively to a contract entered into before the effective date of the statute).

IV.
Senfeld's final contention that only the jury is permitted to triple the actual damages awarded[15] is also without merit. The analogous treble-damage provision of the Sherman Antitrust Act[16] requires as a matter of law that the actual damages found by the jury be tripled. See *1166 Locklin v. Day-Glo Color Corp., 429 F.2d 873 (7th Cir.1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). See also Hydrolevel Corp. v. American Society of Mechanical Engineers, 635 F.2d 118 (2d Cir.1980), affirmed, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (appellate court accepted without discussion that trial court tripled damages awarded by jury); Yentsch v. Texaco, Inc., 630 F.2d 46 (2d Cir.1980) (same). It follows, of course, that the awarding of triple damages is nothing more than a ministerial act which has nothing whatever to do with the fact-finding function of the jury. We think the same holds true for the award of triple damages under Section 812.035(7), Florida Statutes.
Affirmed.
NOTES
[1] The trial court reserved jurisdiction to award attorneys' fees and costs. See § 812.035(7), Fla. Stat. (1983).
[2] Senfeld raises several additional points concerning the quality of the evidence against him or the quality of the trial, which we find either to merit no discussion or which we will discuss in passing.
[3] In all, three letters were sent to Senfeld. Despite the pleasant tone of the letters, it is clear to us that a demand for return of the money was made upon Senfeld.
[4] The property herein is sufficiently identifiable to be capable of being converted. See Aero International Corp. v. Florida National Bank of Miami, 437 So.2d 156 (Fla. 3d DCA 1983); (obligation to pay accrued interest on an escrow account); Allen v. Gordon, 429 So.2d 369 (Fla. 1st DCA 1983) (money wrongfully withdrawn from bank account); All Cargo Transport, Inc. v. Florida East Coast Railway., 355 So.2d 178 (Fla. 3d DCA), cert. denied, 359 So.2d 1214 (Fla. 1978) (creditor's application of money sent by debtor to satisfy debt other than one for which money earmarked). Neither Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970) (failure to pay an indebtedness on an open account is not conversion), nor Armored Car Service, Inc. v. First National Bank of Miami, 114 So.2d 431 (Fla. 3d DCA 1959) (money in deposit bag capable of being converted), supports Senfeld's contention that the $10,000 in the present case was not capable of being converted.
[5] Unlike conversion, the essence of an action for replevin is the "unlawful detention of personal property from plaintiff at the commencement of the action, regardless of whether defendant acquired possession rightfully or wrongfully... ." Pavlis v. Atlas-Imperial Diesel Engine Co., 121 Fla. 185, 189, 163 So. 515, 516 (1935). See Delco Light Co. v. John Le Roy Hutchinson Properties, 99 Fla. 410, 128 So. 831 (1930); see also Security Underwriting Consultants v. Collins, Tuttle Investment Corp., 173 So.2d 752 (Fla. 3d DCA 1965). Thus, the cause of action for replevin first arises with the refusal to return the property upon demand. Since the demand and refusal occurred in the present case in 1979 and the action was commenced two years later, it is obvious that Senfeld's claim that the action was barred by the applicable four-year statute of limitations, see § 95.11(3)(h) and (i), Fla. Stat. (1977), is totally without merit.
[6] An action for an intentional tort must be commenced within four years. § 95.11(3)(o), Fla. Stat. (1979).
[7] The court found in Lund that the express inclusion of the discovery rule in these certain causes of action was merely to point out that regardless of the date of discovery, there would be a maximum outside limit for the bringing of the action.
[8] Senfeld's contention that the Trust Company's action under the theft statute was required to be proved by proof beyond a reasonable doubt is rejected by us for these reasons and upon this authority.
[9] It follows that a criminal conviction is not a necessary predicate to recovery under the civil remedies provisions of the theft statute. See Roush v. State, 413 So.2d 15 (Fla. 1982); Jayre Inc. v. Wachovia Bank & Trust Co., 420 So.2d 937 (Fla. 3d DCA 1982). Accord, United States v. Cappetto, 502 F.2d 1351; Heinold Commodities, Inc. v. McCarty, 513 F. Supp. 311 (N.D.Ill. 1979); Farmers Bank v. Bell Mortgage Corp., 452 F. Supp. 1278 (D.Del. 1978); James v. Brink & Erb, Inc., 452 N.E.2d 414.
[10] Having decided that the statute of limitations for an action for conversion or theft begins to run from the time one is on notice or reasonably should be on notice of the conversion or theft, it is irrelevant whether the Trust Company showed that Senfeld fraudulently concealed his actions from the Trust Company. To the extent that the dictum in Bove v. PBW Stock Exchange, Inc., 382 So.2d 450, 452-53 (Fla. 2d DCA 1980), that the statute of limitations "begins to run at the time of the conversion, except where the latter is fraudulently concealed" suggests that the victim of the conversion must demonstrate not merely a lack of discovery or constructive discovery on his part in order to avoid the running of the statute of limitations, but rather a fraudulent concealment on the part of the converter, we disagree with such a suggestion.
[11] If in fact the jury had found that the theft took place in 1975 (that is, Senfeld took the money with the then-formed intent to wrongfully deprive the Trust Company of it) and that the Trust Company knew or should have known of it at that time, then even assuming, arguendo, that the five-year statute of limitations provided in Section 812.035(10) applied, but see Dade County v. Ferro, 384 So.2d 1283 (Fla. 1980); McGlynn v. Rosen, 387 So.2d 468 (Fla. 2d DCA 1980), rev. denied, 392 So.2d 1376 (Fla. 1981), the Trust Company's action would have been limitations barred and the question of whether the statute is to be applied retroactively rendered moot.
[12] The theft statute did not newly create the crime of conversion. Instead, it incorporated under theft "[c]onduct previously known as stealing; larceny; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud or deception; ..." § 812.012(2)(d)1 (emphasis supplied). See Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982). Thus, Senfeld was on notice that conversion was unlawful in 1975, and no due process right of his would be implicated by applying the statute retroactively.
[13] This statement is limited to Section 812.035 providing for civil remedies. In Faison v. State, 390 So.2d 728 (Fla. 5th DCA 1980), the court held that the State had to prove the elements of a crime under the old larceny statute rather than the new theft statute, where the crime was committed before the effective date of the statute.
[14] Since the existing case law is clear that remedial legislation is given retroactive effect, and the Legislature is presumed to know such existing law, Migliore v. Crown Liquors of Broward, Inc., 448 So.2d 978 (Fla. 1984), the Legislature's declaration that the statute is remedial in purpose is tantamount to a declaration that it is to be given retroactive effect.
[15] The jury did not refuse to award triple damages; the issue simply was not submitted to the jury for its consideration. Thus, Senfeld's argument is not that the trial court's award of triple damages overrode the jury's verdict, but even if it were, it would fare no better than his argument that the tripling of damages is solely within the province of the jury.
[16] Title 15 U.S.C. § 15 (1982) provides in pertinent part:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained,..."
Section 812.035(7), Florida Statutes (1983), provides in pertinent part:
"Any person who is injured in any fashion by reason of any violation of the provisions of ss. 812.012-812.037 shall have a cause of action for threefold the actual damages sustained... ."