**Standford P. BIRNHOLZ, individually and as trustee of the Standford P. Birnholz P.A. Pension Plan, Plaintiff-Appellant,**

v.

**The 44 WALL STREET FUND, INC., a Delaware corporation, Defendant–Appellee.**

No. 88–5532.

United States Court of Appeals, Eleventh Circuit.

Aug. 10, 1989.

---

Herbert A. Warren, P.A., Miami, Fla., for plaintiff-appellant.

Barry D. Hunter, Paul, Landy, Beiley & Harper, P.A., Miami, Fla., for defendant-appellee.

Before CLARK and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

This case presents several questions of first impression with respect to a former provision of the Florida Securities and Investor Protection Act, § 517.011, *et seq.*, Fla.Stat. (1987), which exempted from registration in Florida securities transactions registered with the United States Securities and Exchange Commission (SEC). The plaintiff, Standford P. Birnholz, individually and as trustee of the Standford P. Birnholz P.A. Pension Plan (Birnholz), brought this action in the United States District Court for the Southern District of Florida pursuant to § 517.211, Fla.Stat.,[1] against the 44 Wall Street Fund, Inc. (the Fund). Seeking to recover market losses in excess of $360,000.00 incurred through the purchase and sale of the Fund's shares, Birnholz alleged that the securities of the Fund which he purchased between October, 1980, and March, 1985, were sold in violation of

---

1. Section 517.211 provides that every sale made in violation of the registration provisions may be rescinded at the election of the purchaser, and it makes sellers of unregistered securities liable to the purchaser for damages.

the registration requirements of § 517.07.[2] As an affirmative defense the Fund asserted that the transactions in question were exempt from registration according to § 517.061(19), Fla.Stat. (1978 Supp.), which provided that the registration provisions of § 517.07 did not apply to the sale of securities made in compliance with a registration statement effective under the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* The case was tried before the district court without a jury on April 6, 1988, and April 28, 1988.

During the relevant period Birnholz invested over $2,000,000.00 in the Fund, purchasing approximately 360,000 shares of the Fund's stock. The Fund is a New York based mutual fund which, since about 1968, has sold its shares to investors throughout the United States pursuant to a registration statement filed with the SEC under the Securities Act of 1933.

On August 22, 1979, the Fund applied for an exemption from the Florida registration requirements. By September 1, 1979, the Florida Department of Banking and Finance, Division of Securities and Investor Protection (the Division) had received from the Fund, in addition to a $750.00 filing fee, all of the documents required under § 517.061(19), Fla.Stat. (1978 Supp.) (the original statute),[3] including a notice of intention to sell, a copy of the initial registration statement and prospectus filed with the SEC and an irrevocable consent to service of process. On October 12, 1979, the Division issued to the Fund a "Notification of Exemption" certifying that the Fund had complied with § 517.061(19). Plaintiff's Exhibit 5. This notice authorized the offer and sale of the following securities issue: "$92,000,000 aggregate sales amount of $1 par value Common Stock, to be sold at net asset value with no sales charge." *Id.* Also, although the original statute was silent as to the duration of the exemption, the notification bore a "termination date" of October 8, 1980.

In 1979, the Florida Legislature amended the original statute, adding a requirement that issuers of securities registered with the SEC and exempt from Florida registration pay a $750.00 nonreturnable fee to the Division for each 36–consecutive-month period in which the securities are offered and sold in Florida. § 517.061(19), Fla.Stat. (1979) (the amended statute).[4] The amend-

2. This section makes it unlawful to sell or offer for sale in Florida securities which have not been registered with the state, unless the securities belong to an exempt class or are sold in any exempt transaction.

3. The original statute provided:
   The registration provisions of s. 517.07 do not apply to any of the following transactions:
   . . . .
   (19) The sale of securities pursuant to a registration statement effective under the Securities Act of 1933, provided that the department has received, prior to the offer or sale:
   (a) A notice of intention to sell which has been executed by the issuer, any other person on whose behalf the offering is to be made, a dealer registered under this part, or any duly authorized agent of any such person, and which sets forth the name and address of the applicant, the name and address of the issuer, and the title of the securities to be offered in this state;
   (b) A copy of the initial registration statement and prospectus filed with the Securities and Exchange Commission; and
   (c) Copies of such information or documents which the department may by rule require; and

the person filing a registration statement shall at the time of filing pay the department a nonreturnable fee of 0.1 percent of the aggregate sales price of the securities offered or to be offered in this state, but not less than $20 nor more than $750; and there shall be filed with the registration statement or prospectus the irrevocable written consent as required by s. 517.101.

4. The amended statute exempted from the registration provisions the following transaction, among others:
   (19)(a) The offer or sale of securities pursuant to a registration statement filed under the Securities Act of 1933, provided that prior to the sale the registration statement has become effective and the department has received:
   1. A notice of intention to sell which has been executed by the issuer. . . .
   2. Copies of such documents filed with the Securities and Exchange Commission as the department may by rule require; and
   3. The irrevocable written consent as required by s. 517.101.
   (b) The person filing a notice of intention shall at the time of filing pay the department a nonreturnable fee of 0.1 percent of the aggregate sales price of the securities offered or to be offered in this state, but not less than

ed statute became effective on September 1, 1979. The Fund did not pay any additional fees to the Division until after April 1, 1985. However, at all times relevant to this action, the Fund maintained the effectiveness of its SEC registration statement and delivered current prospectuses, as well as its semi-annual and annual reports and proxy statements, to Birnholz and every other prospective Florida purchaser of the Fund's shares. The district court found that throughout this period—October, 1980, through March, 1985—the Fund operated under a good faith belief that its shares were being sold in full compliance with the exemption requirements of the original statute. The Division has never taken any administrative action against the Fund.

The district court concluded that the original statute entitled issuers of SEC-registered securities to an exemption from Florida registration of unlimited duration, without any renewal requirement, upon the one-time tender of certain documents and the $750.00 filing fee to the Division. Because the Florida Legislature had not expressed an intent to make the amended statute retroactive, the court held that it was not applicable to the offer or sale of securities exempted under the original statute. The district court found that the Fund had perfected an exemption for its securities pursuant to the original statute, having filed the necessary forms and fee before September 1, 1979—the effective date of the amended statute. Thus, the court concluded that the original statute governed the determination of the exempt status of the Fund's securities, and that under the original statute, the Fund's failure to renew its exemption application or to pay additional fees to the Division between October, 1980, and March, 1985, did not adversely affect the exemption obtained by the Fund in August, 1979. Consequently, the court ruled that the challenged offers and sales of the Fund's shares were exempt transactions and therefore denied Birnholz' claim for relief under § 517.211.

In the alternative, the court held that even if the amended statute were controlling, Birnholz still would not be entitled to relief, because there was substantial compliance by the Fund with the terms of the amended statute. To reach this conclusion, the district court found that the only way the Fund had failed to comply with the amended statute was by failing to pay the additional filing fee. The court reasoned that this at most constituted a technical violation of the amended statute which neither caused Birnholz' investment losses nor impaired the regulatory, disclosure or antifraud provisions of the Florida Securities Act. Birnholz appeals that judgment.

We are confronted with three issues on appeal. The first is whether the district court correctly decided that the amended statute was not retroactive, thereby relieving the Fund of an obligation to take steps to maintain the effectiveness of the registration exemption obtained for its securities issue under the original statute. Because we hold that the district court erred in not giving the amended statute retroactive effect, the second question is whether the court correctly construed the amended statute as requiring nothing more than the payment of a $750.00 fee every three years to maintain the effectiveness of a registration exemption. Finally, a determination must be made whether substantial compliance with the amended statute excuses an issuer from strict liability under § 517.211 for the sale of unregistered securities.

■ Because the amended statute evinces no clear legislative intent that it apply retroactively or not, we begin by reviewing some well settled Florida principles of statutory interpretation. "[I]n the absence of an explicit legislative expression to the contrary," Florida courts will construe "a substantive law ... as having prospective effect only." *Young v. Altenhaus*, 472 So.2d 1152, 1154 (Fla.1985). Moreover, as mandated by the due process clauses of the Florida and United States Constitutions,

---

$20 nor more than $750. The fee required by this paragraph shall be paid to the department for each 36–consecutive-month period in which the securities are offered and sold.

The 36–consecutive-month period shall commence upon receipt by the department of the notice of intention to sell.

even a clear expression of retroactivity will be ignored where the putatively retroactive statute adversely affects or destroys vested rights or imposes new duties or obligations " 'in connection with transactions or considerations previously had or expiated.' " *Village of El Portal v. City of Miami Shores*, 362 So.2d 275, 277 (Fla.1978) (quoting *McCord v. Smith*, 43 So.2d 704, 709 (Fla.1949)); *see also, e.g., Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157, 1164–65 (Fla.3d DCA 1984). However, "neither of these rules of statutory construction applies where the statute is solely remedial or procedural." *Senfeld*, 450 So.2d at 1165. These "statutes do not fall within the constitutional prohibition against retroactive legislation and they may be held immediately applicable to pending cases," *El Portal*, 362 So.2d at 278; *Altenhaus*, 472 So.2d at 1154, "because 'no one has a vested right in any given mode of procedure,' " *Walker & LaBerge, Inc. v. Halligan*, 344 So.2d 239, 243 (Fla.1977) (quoting *Ex parte Collett*, 337 U.S. 55, 71, 69 S.Ct. 944, 953, 93 L.Ed. 1207 (1949)).

Adhering to the foregoing rules, if the amended statute constitutes a substantive change in the law, it is not retroactive. But if it be remedial or procedural in nature, the amended statute is applicable to the Fund's securities transactions. We can easily determine that the amended statute is not remedial, for "[b]y definition, a remedial statute is one which confers or changes a remedy; a remedy is the means employed in enforcing a right or in redressing an injury." *St. John's Village I, Ltd. v. Dept. of State*, 497 So.2d 990, 993 (Fla. 5th DCA 1986). The amended statute neither confers nor changes a remedy. Determining whether the amended statute is procedural or substantive is a more difficult undertaking.

The Supreme Court of Florida has described procedural law "as the legal machinery by which substantive law is made effective." *State v. Garcia*, 229 So.2d 236, 238 (Fla.1969). In contrast, the supreme court has defined substantive law "as that ... which creates, defines, and regulates rights, or that part of the law which courts are established to administer." *Id.* Applying these definitions we find that the amended statute, which merely provided a method of maintaining the effectiveness of the exemption privilege,[5] is legal machinery and not a fountain of legal rights. We therefore hold that the amended statute applies retroactively to govern the status of the registration exemption acquired by the Fund in August, 1979.

Our decision is driven by the following considerations. The original statute created an exemption of potentially unlimited duration from the Florida registration provisions for the sale of SEC-registered securities. The exemption would expire, of course, upon completion of the distribution of the SEC-registered issue. That was the substance of the law. In addition, the original statute detailed the process by which an issuer could invoke the privilege of exemption. The original statute required an issuer to submit to the Division certain documents—a notice of intention to sell, a copy of the effective registration statement and prospectus filed with the SEC—and a filing fee not exceeding $750.00. By following that procedure the issuer was entitled to the exemption privilege.

The amended statute simply supplemented the original statute with a new process by which an issuer could maintain the exempt status of its securities transactions—for a potentially unlimited period of time. Cf. *El Portal*, 362 So.2d at 278. The substance of the original statute—exemption from state registration for sales of SEC-registered securities—was not affected by the amendment. The amended statute did not withdraw the exemption, nor change the requirements for qualifying for it nor alter its duration. The amended statute did not "substitute[ ] an entirely new system in place of the old procedure," nor "materially alter[ ] the procedure by

---

5. The Fund concedes that it did not acquire, by complying with the original statute, a vested right to sell its securities in Florida without registering the issue with the state. It acknowledges that exemption from registration was a privilege which the legislature had the *power* to revoke or modify. The Fund's position is that the legislature chose not to exercise that power in enacting the amended statute.

which" an issuer could claim the exemption. *Anderson v. Anderson*, 468 So.2d 528, 530 (Fla.3d DCA), *petition denied*, 476 So.2d 672 (Fla.1985). The amended statute operated in confirmation of an exemption privilege already existing and therefore did "not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes." *City of Lakeland v. Catinella*, 129 So.2d 133, 136 (Fla.1961).

This interpretation of the amended statute would be constitutionally infirm only if it imposed a new obligation on an old transaction. See *St. Johns Village*, 497 So.2d at 993. It does not, however. This is because the amended statute took effect less than one year after the original statute became effective on November 1, 1978. Thus, as of the effective date of the amended statute, September 1, 1979, no issuer had sold SEC-registered securities in Florida pursuant to the original statute for a 36–consecutive-month period. Indeed, no issuer selling under the original statute would have needed to act in accordance with the amended statute for at least 26 months after it became effective. Consequently, applying the amended statute retroactively in no way imposes an obligation on an issuer as a result of securities transactions had between November 1, 1978 and September 1, 1979.

■ Birnholz also complains that the district court incorrectly interpreted subsection (b) of the amended statute as requiring only the periodic payment of a nonrefundable fee following the initial filing of documents and fee payment. The relevant statutory language is: "The fee required by this paragraph shall be paid to the department for each 36–consecutive-month period in which the securities are offered and sold. The 36–consecutive-month period shall commence upon receipt by the department of the notice of intention to sell." § 517.061(19)(b), Fla.Stat. (1979). According to Birnholz, this passage implies that every three years issuers must refile, in addition to the fee, a notice of intention to sell, a copy of the initial registration statement on file with the SEC, a written consent to service and any other documents required by the Division. Birnholz points to a contemporaneous administrative enactment, Rule 3E–500.09, Fla.Admin.Code (1979),[6] which became effective on December 5, 1979, as evidence of the Division's construction of the statute, and he urges us to accord it great weight. The rule suggests that notices of intention to sell consist of several components, including all of the documents listed in subsection (a) of the amended statute. It also says that exhibits cannot be incorporated by reference to *previous* filings. We hold that the plain language of the amended statute is contrary to Birnholz' position and find it unnecessary to resort to extrinsic aids to determine the legislative intent behind the law.[7]

Florida law "clearly requires that the legislative intent be determined primarily from the language of the statute because a statute is to be taken, construed and applied in the form enacted." *Thayer v. State*, 335 So.2d 815, 817 (Fla.1976). This is because "the Legislature must be as-

---

**6.** The rule provides:
(1) Notices of Intention to Sell pursuant to Section 517.061(19), F.S., shall be filed on the forms prescribed by the Department and shall include:
(a) one (1) copy of the cover page of the initial registration statement as filed with the United States Securities and Exchange Commission, unless effective with the S.E.C. upon filing with this Department;
(b) an irrevocable written consent to service as required by Section 517.101, F.S.;
(c) payment of the statutory fee as required by Section 517.061(19)(d) [sic], F.S.
(2) Exhibits which are required by the Notice of Intention to Sell form may not be incorporated by reference to previous filings.

(3) In addition to the requirements of subsection (1) of this rule, prior to the confirmation by the Department of a claim of exemption by the notifier pursuant to Section 517.061(19), F.S., the notifier shall provide the Department one (1) copy of the final definitive prospectus as per the effective registration with the [SEC].

**7.** We stress that the validity of Rule 3E–500.09 is not an issue before us. Whether we may use it as an extrinsic aid in the construction of the amended statute is the question. Because we are able to determine legislative intent without consulting extraneous evidence, we need express no opinion on the rule.

sumed to know the meaning of words and to have expressed its intent by the use of the words found in the statute." *Id.* Thus, the cardinal rule of statutory construction is that " '[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.' " *Streeter v. Sullivan,* 509 So.2d 268, 271 (Fla.1987) (quoting *A.R. Douglass, Inc. v. McRainey,* 102 Fla. 1141, 137 So. 157, 159 (1931)). As a result, "[i]nquiry into legislative intent may begin only where the statute is ambiguous on its face." *Id.*[8]

We believe that the words used in the amended statute convey a plain and obvious meaning, admitting no ambiguity. A close reading of the amended statute reveals that to maintain the effectiveness of an exemption from registration under section 517.061(19), subsection (b) requires only that an issuer pay the prescribed fee after three years of selling securities in Florida. In the amended statute, subsection (a) deals with the documents which must be filed and subsection (b) mandates the fee. Subsection (b) explicitly states that "[t]he fee ... shall be paid ... for each 36–consecutive-month period in which the securities are offered and sold." Had the legislature intended that the documents detailed in subsection (a) also be refiled periodically, presumably it would have provided for that expressly therein, as it did in the immediately succeeding subsection (b). See *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17, 24 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972)); *accord, Devon–Aire Villas Homeowners Ass'n., No. 4, Inc. v. Americable Assoc., Ltd.,* 490 So.2d 60, 62 n. 5 (Fla.3d DCA 1985). Given the unequivocal language requiring a new fee payment at the end of three years, we refrain from concluding, in the absence of a clearly expressed intent to

the contrary, that any documents were also required to be refiled at that time. Accordingly, we agree with the district court's construction of the amended statute.

Having determined that the amended statute applies in this case and that the district court correctly interpreted its provisions, we are left with an issue involving a question of law determinative of the cause. Whether technical violations of securities laws ought to be excused under the equitable doctrine of substantial compliance is an issue on which there is room for disagreement. *Compare McConnell v. Surak,* 774 F.2d 746, 749 (7th Cir.1985) (Illinois law clear in allowing only statutory, not equitable, defenses to be raised by defendant in case involving failure to register securities) *with Sharp v. Idaho Inv. Corp.,* 95 Idaho 113, 504 P.2d 386, 391 (1972) (appellants substantially complied with provisions of the Idaho Blue Sky Law). Although Florida law has overlooked trivial statutory violations in contexts other than the regulation of securities, *Fallis v. City of North Miami,* 127 So.2d 883, 884 (Fla.1961) (city substantially complied with those aspects of its charter essential to the ultimate validity of the debt securities); *cf. Garner v. Ward,* 251 So.2d 252, 256 (Fla.1971) (legislative intent prevails where strict application of the letter of the law would defeat its purpose, or be absurd), no controlling precedent of the Florida Supreme Court answers the precise issue presented here. We therefore certify the following question to the Supreme Court of Florida pursuant to Rule 9.150, Fla.R.App.P.:

> WHETHER AN ISSUER THAT PROPERLY OBTAINED AN EXEMPTION FROM STATE REGISTRATION PURSUANT TO § 517.061(19), Fla.Stat. (1978 Supp.), BUT FAILED, AFTER 36 CONSECUTIVE MONTHS OF SELLING ITS SHARES IN FLORIDA, TO FORWARD THE $750.00 FEE PROVIDED FOR IN THE AMENDED STATUTE, § 517.061(19)(b), FLA.STAT. (1979), SUB-

---

**8.** It probably is not necessary to add that the interpretation of a statute is a question of law for the court to decide. It is important to note, however, that Florida law prohibits the use of expert testimony to determine the meaning of a

statute. *Devin v. City of Hollywood,* 351 So.2d 1022, 1026 (Fla. 4th DCA 1976). We therefore give no weight to the expert testimony offered by the parties on the meaning of the amended statute.

STANTIALLY COMPLIED WITH THE EXEMPTION REQUIREMENTS, THEREBY AVOIDING LIABILITY TO INVESTORS UNDER § 517.211 FOR THE SALE OF UNREGISTERED SECURITIES IN VIOLATION OF § 517.07.

We do not intend the particular phrasing of the question to limit the Supreme Court of Florida in its consideration of the issues posed by the entire case. While we are of the opinion that the law of Florida is clear with respect to the first two issues presented in this appeal, we realize that reasonable minds may disagree with our conclusions. For that reasons, we invite the attention of the Florida Supreme Court to either or both of those issues and emphasize that the court is free to decide them as it may see fit. In order to assist consideration of the case, the clerk of the court is directed to transmit this certificate, as well as the briefs of the parties and record filed with the court to the Supreme Court of Florida and also to transmit copies of the certificate to counsel for the parties.

QUESTION CERTIFIED.

