CARROLL, Judge.
On December 20, 1966, appellants filed a complaint against the appellee, as follows:
“COME NOW the Plaintiffs, LEF-FERTS L. MABIE, JR., and J. W. CREWS, and sue Defendant, C. B. TUTAN, and allege:
1. This is an action for damages which exceed $5,000.00.
2. On or about December 22, 1962, the said Defendant converted to his own use 331/4% of the capital stock of SURINAM TIMBER CORPORATION of the value of in excess of $50,000.00, which was then the property of the Plaintiffs.
WHEREFORE, Plaintiffs demand judgment for damages against Defendant.”
A motion of the defendant to dismiss the complaint was denied. The defendant answered, denying the allegation relating to conversion, and averring the action was barred by the statute of limitations and by acquiescence, ratification and estoppel. The defendant moved for judgment on the pleadings, invoking the three year statute of limitations applicable to such actions, § 95.11(5) (c) Fla.Stat.j F.S.A. The motion was denied. Thereupon the parties plunged into extensive discovery proceedings, after which the defendant moved for summary judgment. That motion was denied without prejudice to renew it after further discovery. Some additional dis *873 covery was made by both parties. Defendant renewed the motion, and summary judgment was entered in favor of the defendant on January 14, 1969, without statement therein of the ground or grounds therefor.
Upon consideration of the pleadings and the evidentiary matter that was before the court on the hearing on the defendant’s motion for summary judgment, we hold the trial court was eminently correct in granting summary judgment because in our view no conversion was shown.
The evidence before the trial court revealed certain dealings between the parties to this action and other persons, relating to a speculative venture in a lumber business in South America. In 1960, one Joe W. Harris interested these parties, and others, in supplying capital for the purpose of obtaining a concession in Surinam, South America, to conduct timber operations there, for the cutting and milling of timber and export of the lumber. A corporation was formed to conduct such operations. The stock of the corporation was purchased by these parties and others. After some shifting of interests by certain of the original investors, the stock holdings of the plaintiffs and of Tutan were approximately one-third and one-fourth respectively. Upwards of $100,000 was paid in for the stock. In addition, certain of the stockholders subsequently made advances to the corporation. However, prior to reaching a point of production, the investors were faced with a continuing need for substantial additional capital to cover cost of the construction of the necessary mill and for equipment and the expenses of the lumbering operations.
It was concluded by all of the stockholders that it would be to their interest to find a buyer for the project. In 1961 Tutan and Harris requested of the other stockholders that they place their stock with Tutan so it would be available for prompt delivery upon a sale. The stockholders complied. Mabie delivered his stock and that of certain others to Tutan. At that time Tutan was authorized to sell for the benefit of all. However, a sale which then was in prospect did not occur. In a period which followed it appeared that some if not all of the stockholders were actively seeking a sale of the business. Prior to sale of the business which occurred in December of 1962, Mabie made a number of requests or demands upon Tutan for return of the stock he had delivered to the latter. Tutan retained the stock, not for himself, but for the continuing purpose of selling as originally planned. That purpose was evidenced by Tutan so stating in response to requests made upon him for return of the stock, and by the nature of the sale which later was made.
Sale of the business, by transfer of the assets of the corporation and transfer of the corporate stock was made by Tutan and Erwin, two of the stockholders, by a written contract entered into by them on behalf of all the stockholders. The sale was made to Harris and one J. Carey Scott, Jr., on December 22, 1962, for a consideration of $150,000, represented by three promissory notes of $50,000 each, payable in one, two and three years. The stock of the corporation which was transferred to the purchasers was redelivered by them as a pledge to secure payment of their purchase money promissory notes. In the written agreement by which that sale was effected, it was expressly stated that the proceeds of the sale were to be applied first to repay stockholders who had loaned or advanced monies to the corporation, for the amounts so advanced by them, and then were to be distributed to the stockholders in proportion to their respective stock holdings. The amounts or percentages of stock held by the several stockholders were set out in the agreement. The sale of December, 1962, which for some reason was not reported to the other stockholders, became known to plaintiffs in July of 1964. Up to that time no collection had been made, and the first of the notes was in default. Thereupon Mabie conferred with Tutan, *874 who then informed Mabie that the notes were made out to Tutan and Erwin as Trustees, and were being held for the benefit of the stockholders, and that if and when payments thereunder became distributable to the stockholders, his (Mabie’s) due share would be distributed to him. Tutan supplied Mabie with copies of the notes.
In the transactions disclosed, Tuton did not assert a claim to the stock of the others inconsistent with their ownership thereof, and in selling the stock gave due recognition to the respective stockholder interests. By the terms of the sale contract of December 22, 1962, and by Tutan’s statement of intention in his 1964 conference with Mabie and in his deposition, it is shown that the plaintiffs stand to receive their proper share of any proceeds of the sale distributable to the stockholders.
A conversion is an act of dominion wrongfully asserted over another’s property inconsistent with his ownership therein. 7 Fla.Jur., Conversion § 2. Regarding conversion here the questions are: whether the failure or refusal of Tutan to redeliver the Mabie stock upon request or demand of the latter was a conversion of the stock prior to sale of the business, and, if not, then whether the transfer of the Mabie stock by Tutan in the sale of the business made by him and Erwin on behalf of all of the stockholders, was a conversion of the Mabie stock in the form of an unauthorized disposition thereof.
Regarding the first of those questions, in 7 Fla.Jur., Conversion § 9, it is said: “The mere detention or failure to deliver the personal property of another by one who came lawfully into possession thereof does not necessarily constitute a conversion.” See also 53 Am.Jur., Trover and Conversion §§ 44 and 45. The evidence shows it was known to the stockholders that Tutan held the stock for the purpose of intended sale of the business, in which delivery of all the stock was contemplated, and that in requesting or demanding return of his stock Mabie did not announce or inform Tutan that it was his intention to withdraw such stock from participation in a sale of the business. On the contrary, it was disclosed that Mabie sought return of the stock for the same purpose, that is, for use in sale of the business if he should be able to make one. Tutan’s failure or refusal to redeliver the Mabie stock upon demand was not unqualified, as pointed out above.
We find no need to determine whether upon that evidence Tutan’s refusal of the demands for return of the stock, prior to the time of the sale, constituted a conversion. This is so because if that was a conversion of the Mabie stock (prior to sale of the business) then clearly the action filed more than three years thereafter was barred by the statute of limitations. Moreover, that was not the conversion alleged. In the complaint it was alleged that the stock was converted on December 22, 1962, which was the date of the sale.
Turning to the second question relating to conversion, which is whether Tutan’s inclusion of the Mabie stock in the sale of the corporate business amounted to a conversion thereof, which is the conversion alleged in the complaint, we hold that the evidence failed to show a conversion. In the brief of the appellants no contention is made that a decision relating to this question could not properly be determined on motion for summary judgment.
Contending that a conversion of Mabie’s stock resulted from its inclusion in the sale on December 22, 1962, and relying on Mabie’s deposition testimony that he did not learn of the sale until July of 1964, the appellants argue that the cause of action should be held to have accrued in 1964, and therefore that their action filed in 1966 was not barred by the three-year statute of limitations. The only contention made by the appellants in their brief of the existence of a genuine triable issue which could not be resolved on summary judg *875 ment was that there was a triable issue as to the time when appellants learned of the sale. In view of our holding that the judgment is entitled to be upheld on the ground that the sale did not constitute a conversion of the appellants’ stock, we find no need to evaluate the arguments of counsel relating to the applicability or inapplicability of the statute of limitations.
Affirmed.