437 So.2d 156 (1983)
AERO INTERNATIONAL CORPORATION, Appellant/Cross-Appellee,
v.
FLORIDA NATIONAL BANK OF MIAMI, Appellee/Cross-Appellant.
Nos. 81-1925, 81-1930.
District Court of Appeal of Florida, Third District.
July 19, 1983.
Rehearing Denied September 28, 1983.
*157 Bedell, Bedell, Dittmar & Zehmer and C. Harris Dittmar, Jacksonville, for appellant/cross-appellee.
Paige & Catlin, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel S. Perwin, Miami, for appellee/cross-appellant.
Before SCHWARTZ, C.J., HENDRY, J., and OWEN, WILLIAM C., Jr., Associate Judge.
OWEN, WILLIAM C., Jr., Associate Judge.
The principal issue in this case (in which plaintiff-appellant had alleged that the defendant-appellee had converted certain funds entrusted to it under an escrow agreement) is whether the trial court erred in setting aside a jury award of punitive damages on the finding that "there was no support in the competent evidence of record that the Bank's conduct in this case was so malicious or outrageous that its retention of the funds would warrant or justify an award for punitive damages." We conclude that the court did so err.
To set the stage for this suit we need to mention briefly prior litigation in which appellant, Aero International Corporation ("International"), had been involved.
At an earlier date International had entered into a contract with the Republic of Colombia for the repair and overhaul of two of its C-130 military transport airplanes, which repair work International in turn had subcontracted to Aero Corporation ("Aero"). International and Aero became involved in litigation over the subcontract. That suit was settled. The settlement included a requirement that International place in escrow with appellee, Florida National Bank of Miami ("Bank") $650,000.00 of the funds advanced by the Republic of Colombia under its contract with International. The escrow agreement provided, in substance, that the funds were to be used to cover the costs of such repairs as might be found necessary after a complete inspection of the two airplanes, with any unused portion to be paid to the Republic of Colombia upon the order of and pursuant to directions from International. A memorandum addendum to the escrow agreement provided, among other things, that interest *158 earned on the escrow account accrued to the benefit of International and was to be deposited quarterly into its checking account with the Bank.
International deposited the required funds in escrow with the Bank. However, before the first quarterly interest payment was due, the Republic of Colombia filed suit against International and obtained an order enjoining withdrawal of any of the escrowed funds. At the same time, counsel for Republic of Colombia notified the Bank that should it disburse any funds in furtherance of the escrow agreement it would be held liable to the Republic of Colombia.
When the first quarterly interest payment became due, the Bank, in order to protect itself from any liability, and relying upon (1) a provision of the escrow agreement permitting it to retain escrowed funds pending resolution of any conflict over the funds, (2) its understanding of the breadth and intent of the injunctive order, and (3) advice of its own counsel, refused to credit to International's checking account the earned interest until such time as the conflicting claims were resolved. The Bank maintained its position despite International's insistence that neither the exculpatory provision of the escrow agreement nor the injunctive order applied to the earned interest, and despite International's repeated admonitions to the Bank that the latter's actions were in violation of its contract and were causing International serious financial hardship in its survival for existence during the ongoing litigation.
Nearly two years later, with Republic of Colombia's suit still pending and with the Bank unrelenting in its position, International brought this action for conversion. Upon trial the jury returned its verdict awarding both compensatory and punitive damages. Judgment was entered on the verdict. However, on post-trial motions, the judgment was vacated, a directed verdict was entered for the Bank on the punitive damage award, and a remittitur or new trial ordered on the compensatory damage award. International accepted the remittitur but has appealed the order taking away punitive damages, and the Bank has cross appealed the denial of its motion for directed verdict on liability and its alternative motion for a new trial on damages. As stated at the outset, we view the primary issue as being whether the trial court erred in vacating the award of punitive damages.
International first contends that the order is legally insufficient because the bases for an award of punitive damages are not limited to conduct that is "malicious or outrageous" (referring to the language appearing in the court's order), but also include willful, tortious acts done with total and wanton disregard for the rights of or effect on the plaintiff. It is certainly correct that "a legal basis for punitive damages exists where torts are committed in an outrageous manner or with fraud, malice, wantonness or oppression," Wackenhut Corp. v. Canty, 359 So.2d 430, 435 (Fla. 1978). However, we do not deem the trial court's order facially insufficient because of its failure to recite the full litany of each and every basis of punitive damages when it is apparent to us that the court used the words "malicious or outrageous" in the generic sense.
International next argues the sufficiency of the record evidence to justify the jury verdict. Putting aside the ample evidence upon which the jury, had it been so inclined, could have returned a verdict in favor of the Bank,[1] we find in the record *159 competent evidence from which the jury reasonably could have found that the Bank (1) occupied a fiduciary relationship with International, (2) held in its possession specific, identifiable funds belonging to International as to which it had clear and specific instructions to place in International's checking account with the Bank, (3) intentionally and willfully refused to follow those instructions, despite demands from International that it do so, (4) knew that the preliminary injunction applied only to the principal and not to the accrued interest, (5) failed to disclose to its own attorneys the addendum to the escrow agreement pertaining to disposition of the accrued interest, and (6) acted solely to protect its own interest and with willful and wanton disregard for the rights of, and the affect upon, International. Since a legal basis for punitive damages exists where torts are committed in an outrageous manner or with wantonness or oppression, Wackenhut Corp. v. Canty, supra, the trial court was correct in permitting the issue of punitive damages to go to the jury and erred in deciding, post-trial, that the evidence of malice or outrageousness would not justify an award of punitive damages.
The comprehensive and well written brief submitted on behalf of the Bank contains several arguments in support of the trial court order which merit comment.
The Bank first argues that its conduct was, at most, a breach of contract, for which punitive damages are not recoverable irrespective of the motive of defendant, unless the conduct also amounts to an independent tort, citing Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976), and numerous other cases in support of that apodictic principle. The record makes clear, however, that the case was tried and presented to the jury on the theory that the Bank's conduct amounted to the tort of conversion, as to which there was both competent evidence and proper instruction.
The Bank next argues that its conduct did not constitute the independent tort of conversion because (a) the Bank's dominion over the property was not inconsistent with International's ownership, citing Mabie v. Tutan, 245 So.2d 872 (Fla. 3d DCA 1971), (b) the Bank did not attempt to appropriate an ownership interest in the property, citing King v. Saucier, 356 So.2d 930 (Fla.2d DCA 1978), (c) the money was not identifiable but was merely an obligation of the Bank to pay, and thus could not be the subject of conversion, citing Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970), and (d) even if the Bank's conduct did constitute a conversion it was not committed with the requisite degree of bad faith or reckless disregard for the rights of others, citing to record evidence attempting to prove that the Bank was at all time mindful of the rights of International. Appellant, quite correctly we think, has countered these arguments by pointing out (a) conversion may consist of the wrongful deprivation of a person of property to the possession of which he is entitled, citing Star Fruit Company v. Eagle Lake Growers, Inc., 160 Fla. 130, 33 So.2d 858 (1948) and Mabie v. Tutan, supra, (b) the accrued interest was a specific sum of money which the Bank received in a fiduciary capacity under specific instructions and the refusal to deliver the money according to the instructions would constitute conversion, citing All Cargo Transport, Inc. v. Florida East Coast Railway, 355 So.2d 178 (Fla. 3d DCA 1978), and Adams, George, Lee, Schulte & Ward, P.A. v. Westinghouse Electric Corp., 597 F.2d 570 (5th Cir.1979), (c) the record contains other evidence (to which we have earlier referred) tending to prove that the Bank did act with willful and wanton disregard of the rights of International, and (d) in any event, the trial court's post-trial order vacating the award of punitive damages was not predicated upon the insufficiency of the evidence to establish the independent tort of conversion (and in fact the court had found the evidence to be sufficient for that purpose in denying the Bank's motion for directed verdict on that ground), but was founded solely upon a determination of the absence of sufficient evidence of malice and outrageousness, a point separately addressed.
The Bank, on its cross appeal, argues (1) the trial court erred in denying its motion *160 for new trial on compensatory damages conditioned upon International accepting the remittitur and (2) should this court reverse the trial court in vacating the award of punitive damages, the Bank should be entitled to a new trial on punitive damages. There was no error in denying the Bank's motion for new trial conditioned upon International accepting the remittitur. Nor is there any need to again submit to the jury the determination of the amount of punitive damages where the amount awarded was not disproportionate to the Bank's net worth and the only purpose to be served would be to have another jury set the amount. The trial court quite wisely permitted the issue to be decided by the jury so that, should the post-trial vacating of the verdict be reversed on appeal, the verdict simply may be reinstated and thus the judicial effort invested in the trial not be lost.
The judgment is reversed and this cause remanded to the trial court with instructions that (a) the verdict for punitive damages be reinstated, and (b) judgment for International be entered for compensatory damages on the remittitur and for punitive damages on the verdict.
HENDRY, J., dissents.
NOTES
[1] The record is replete with competent evidence from which the jury could have found that the Bank (1) did only that which the escrow agreement permitted, (2) was precluded from doing otherwise by the preliminary injunction entered in the Republic of Colombia's suit, (3) was acting in good faith on the advice of counsel, (4) occupied only a debtor-creditor relationship with International rather than that of a fiduciary, (5) did not act with malice or outrageousness or reckless disregard for the rights of International, or (6) at most, did nothing more than wilfully and maliciously breach its contract with International. However, since the jury chose to render its verdict in favor of International and award both compensatory and punitive damages, our task is to discern whether the record also contains competent evidence upon which the jury could have based such awards.