817 So.2d 1059 (2002)
FLORIDA DESK, INC., Appellant/Cross-Appellee,
v.
MITCHELL INTERNATIONAL, INC., et al., Appellees/Cross-Appellants.
No. 5D01-1060.
District Court of Appeal of Florida, Fifth District.
June 7, 2002.
*1060 Margaret A. Wharton, of Margaret A. Wharton, P.A., Oviedo, for Appellant/Cross-Appellee.
Stacy D. Blank, Thomas M. Burke and Jolee Land, of Holland & Knight, LLP, Tampa, for Appellees/Cross-Appellants, Development Specialists, Inc.
No Appearance for Appellee, Mitchell International, Inc.
GRIFFIN, J.
This is an appeal and cross-appeal arising out of the judgment of the lower court that Mitchell International, Inc. ["Mitchell"] committed an act of civil theft of monies belonging to Florida Desk, Inc. ["Florida Desk"]. See § 772.11, Fla. Stat. (1997). Because our conclusion that Mitchell did not commit civil theft is dispositive of all issues, we examine that issue only.
Florida Hospital Heartland ["Florida Hospital"] engaged the defendant below, Mitchell, to procure office equipment for its new hospital in Sebring. The transaction and flow of paperwork as described by the representative of Florida Hospital was as follows: Mitchell was the purchaser of the goods, which it would then sell to Florida Hospital. Mitchell would prepare a purchase order directed to a vendor for an item or items. It was then sent to Florida Hospital to verify compliance with their specifications. After approval, the purchase order was sent by Mitchell to the supplier, in this case, Florida Desk. Mitchell would invoice Florida Hospital for fifty percent of the purchase price, denominated as a "deposit." Those monies were not segregated in any way; they were deposited into Mitchell's general operating bank account, and nothing in the record suggests that doing so was a breach of Mitchell's agreement with Florida Hospital. Nor is there any suggestion that Mitchell had obligated itself to Florida Desk to obtain a deposit or to hold it for Florida Desk's benefit. Indeed, it appears that Florida Desk did not even know about the deposits. Thereafter, when the goods were delivered to Florida Hospital, Mitchell was to invoice the hospital for the balance due and Florida Hospital was to pay Mitchell. Mitchell's profit was calculated as a percentage of the total purchases and was to be paid by Florida Hospital at the completion of the entire contract.
Following this procedure, in June and July 1997, Mitchell sent three purchase orders to Florida Desk. Mitchell invoiced Florida Hospital, which forwarded three deposits to Mitchell in the total amount of $27,373.05. Florida Desk delivered the office furniture to Florida Hospital in August 1997 and sent invoices to Mitchell for the total sum of $57,487.24. Mitchell never paid these invoices.
Recognizing that the tort of civil theft is not committed by the mere failure to pay monies contractually due,[1] Florida Desk's civil theft theory is that Mitchell committed civil theft by depositing in its operating account, and, thereafter using, the "deposits" received from Florida Hospital.
In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent. Gersh v. Cofman, 769 So.2d 407 (Fla. 4th DCA 2000), review denied, 791 So.2d 1097 (Fla.2001). In Burke v. Napieracz, 674 So.2d 756 (Fla. 1st DCA 1996), the court held that the economic loss rule did not preclude a cause *1061 of action for a tort distinguishable from, or independent of, breach of contract where the defendant was to receive specifically identifiable social security funds, deposit those funds in an identifiable bank account, and forward the funds to plaintiff. The defendant was not authorized to withdraw monies from the account except as specifically authorized by Burke. The First District noted that breach of the agreement would have resulted from the defendant's failure either to properly deposit the social security funds or to provide the funds to Burke as requested. A tort was committed because, not only did the defendant fail to perform his contractual obligations, he took the funds for his personal use. The court held that an "affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted" gave rise to a tort separate and independent from the breach of contract. Id. at 758. See also Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A., 710 So.2d 127 (Fla. 3d DCA 1998).
Unlike Burke, the funds received by Mitchell from Florida Hospital and others were unsegregated and were placed in a general operating account. It was not possible to identify specific monies that came from, or were intended for, specific clients. In Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970), the court identified certain criteria to look for in deciding whether a conversion of money has taken place:
There is nothing in the nature of money as personal property which makes it an improper subject of conversion so long as it consists of specific money capable of identification. To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified. Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained. An example is where a specific sum of money is to be held in constructive trust until the occurrence of a specified event.
* * *
The requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally. [citations omitted].
243 So.2d at 648.
Here, there is no evidence that there was any obligation on Mitchell's part to keep intact or hold a specific fund to deliver to Florida Desk. Florida Desk did not require a deposit before shipping and did not require Mitchell to hold a deposit before accepting the purchase order. The fact that the amount is certain does not make an "identifiable fund." It is necessary to show that the same monies paid to Mitchell were to be held by Mitchell for the benefit of Florida Desk. But there is no evidence that such was Mitchell's obligation. Mitchell was the buyer of the goods and had to look to Florida Hospital for payment. The risk of nonpayment by Florida Hospital fell on Mitchell, not Florida Desk. Thus, Mitchell's demand of fifty percent payment from Florida Hospital before buying goods it was having shipped directly to Florida Hospital does not create any ownership rights in Florida Desk.
REVERSED and REMANDED.
PETERSON, J., concurs.
PLEUS, J., dissents, without opinion.
NOTES
[1] See Gambolati v. Sarkisian, 622 So.2d 47 (Fla. 4th DCA 1993)(debt which may be discharged by the payment of money in general cannot form the basis of conversion); Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970)(mere obligation to pay money may not be enforced by conversion action).