[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10126

_____

ALEXANDER BOSTIC,

                                        Plaintiff-Appellee,

*versus*

MATARI BODIE,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-60661-AHS

_____

Before ROSENBAUM, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

This dispute emerges from the fallout of a *Ponzi* scheme Judith Paris-Pinder orchestrated from late 2019 to late 2021.[1]  Paris-Pinder represented to her victims that they could invest in a personal-injury legal practice by advancing the practice's clients payment in return for the investment plus interest once insurance settled the clients' claims.

Defendant-Appellant Matari Bodie was one such investor.  And after some of Bodie's investments with Paris-Pinder generated returns, Bodie approached Plaintiff-Appellee Alexander Bostic with the opportunity.

Bostic and Bodie entered several loan agreements memorializing Bostic's investment.  Bostic then informed his pastor and other synagogue members about Bodie's proposal, who signed similar loans with Bodie.  But Bodie's agreements with Bostic and his associates guaranteed a lower rate of return than those Paris-Pinder offered because Bodie planned to retain some of the Paris-Pinder payouts for himself.

Eventually, Paris-Pinder's *Ponzi* scheme collapsed, and Bodie's derivative scheme with it.  Bostic then filed this action on

---

[1] Paris-Pinder entered a consent judgment with the Securities & Exchange Commission in September 2022, *see SEC v. Paris-Pinder*, No. 22-cv-23100 (S.D. Fla. 2022), and pled guilty to wire fraud in November 2022, *see United States v. Paris-Pinder*, No. 22-cr-20452 (S.D. Fla. 2022).

24-10126                Opinion of the Court                3

behalf of himself and, as an assignee,[2] Bodie's other purported victims. He alleged breach of contract, fraud and misrepresentation, unjust enrichment, and civil theft, to recover funds paid to Bodie.

Both parties moved for summary judgment. As relevant to this appeal, the district court entered summary judgment for Bostic on his civil-theft, unjust-enrichment, and fraudulent-misrepresentation claims.

After a careful review of the record, we affirm the district court's grant of summary judgment on Bostic's unjust-enrichment claim. Simply, equity demands that Bodie return the funds Bostic and the Assignors sent him. But we vacate as to the civil-theft and fraudulent-misrepresentation claims. Under Florida law, civil theft is an inappropriate tort for redressing claims that a defendant has misused or misappropriated another's money by failing to fulfill a debt that mere repayment may satisfy. Plus, with respect to both the civil-theft and fraudulent-misrepresentation claims, a genuine dispute of material fact exists as to the parties' mental state, including Bodie's intent to defraud Bostic and the Assignors when he proposed the Business Loan Agreements.

As a result, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

_____

[2] Article III of the Constitution permits an assignee to bring suit on behalf of others, "even when the assignee has promised to remit the proceeds of the litigation to the assignor[s]." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008).

## I.    BACKGROUND

### A.  Factual Background

Judith Paris-Pinder conducted a *Ponzi* scheme from 2019 to 2021.  As part of the scheme, she promised victims that she'd invest money into a personal-injury attorney's practice whose clients' lawsuits would generate insurance settlements.  The investments, Paris-Pinder represented, would finance payments to the attorney's clients who would then remit the investments plus interest when the insurers paid in full.

Matari Bodie first invested in Paris-Pinder's *Ponzi* scheme in April 2020.  His investment seemed to pay off.  After giving Paris-Pinder $5,000, Bodie received $7,500—a 50% rate of return—just ten weeks later.  Bodie then invested about one-hundred more times with Paris-Pinder, documenting the transactions in a "Business Loan Agreement."  Paris-Pinder prepared the Business Loan Agreements, and they confirmed that she would return to Bodie his initial investment, plus a fifty-percent return, by a specified date.

In May 2021, Bodie told Alexander Bostic about his dealings with Paris-Pinder.  Then Bostic executed several near-identical Business Loan Agreements with Bodie, with one key distinction: Bodie dropped the rate of return on the loan so he could pocket some profits from Paris-Pinder's scheme.

Between September 27, 2021, and October 20, 2021, Bodie entered into similar Business Loan Agreements with The Way of Yah (a religious entity), and several of its members: Dannie

Pickard, Jahi Richardson, Anthony Palmer, Shakeia Fleeks, Austin Smith, Justin Miller, Ryan Magwood, and Chanel Miller (collectively, the "Assignors"). These contracts required the Assignors to deliver Bodie a specified sum and guaranteed that Bodie would repay the Assignors at a date certain. But Bodie never discussed the loans with the Assignors directly. Bodie stresses that, although he prepared them with the understanding that the Assignors would read and assent to them, he did not direct Bostic to recruit others. Bodie instead suggests that Bostic recruited the Assignors and, upon his own initiative, explained to them Paris-Pinder's business opportunity.

In total, Bostic and the Assignors sent $299,000 to Bodie's account at TD Bank. The funds were not segregated within the account.[3]

On September 4, 2021, Paris-Pinder stopped paying Bodie, several weeks before Bodie executed the loans with the Assignors. But at the time, Bodie maintains, Paris-Pinder's delays were

---

[3] Bostic originally agreed to invest $50,000 with Bodie. The pair executed that Business Loan Agreement on July 5, 2021, with a repayment date of August 30, 2021. But on September 15, 2021, they executed another Business Loan Agreement. In the September agreement, Bostic loaned $30,000 to Bodie. To fund this agreement, the parties used a portion of the amount that Bostic loaned Bodie as part of the July agreement. As Bostic explained in a text message to Bodie, Bostic wanted "leave some [money] in." So the next day, Bodie paid Bostic $32,650, and, in effect, the September agreement superseded the July one. The $30,000 dollars debited to the September agreement constitutes Bostic's share of the total amount Bodie allegedly owes Bostic and the Assignors.

common, so he says he had no immediate concern that he would default on his loans with Bostic and the Assignors. When the weeks passed, though, and Paris-Pinder never remitted payment to Bodie, Bodie faced impending defaults on Paris-Pinder loans he had taken out with other investors. So Bodie used some of the Assignors' funds to pay off those other loans. In doing so, Bodie bode his time in the hopes that Paris-Pinder would make good on her agreements and that he could then repay the Assignors.

But Bodie's hopes quickly turned to concerns as he began to run out of money to pay off his outstanding Business Loan Agreements. In November 2021, Bodie returned $200,000 to Right Choice Motors, an entity related to Henry Smith, the pastor at the Way of Yah Congregation. Bodie contends he did so because he realized that Paris-Pinder's scheme was a scam and that he wished to remediate as much of the loans he collected as he could. But Bostic and the Assignors suggest the payment related to a different contract, not the Business Loan Agreements that Bodie signed with them.

Bodie remains indebted to Bostic and the Assignors and has not repaid any of the $299,000 they sent to Bodie throughout the scheme. Nor has Bodie paid the interest or the late fees that the Business Loan Agreements guaranteed Bostic and the Assignors. Those other debts brought the amounts allegedly owed to $375,300, per Bostic's April 1, 2022 complaint:

| Creditor | Debt Type | Itemized Debt | Total Debt |
|---|---|---|---|
| Bostic | Principal | $30,000 | $37,650 |
| | Interest | $7,500 | |
| | Late Fees | $150 | |
| The Way of Yah | Principal | $170,000 | $212,650 |
| | Interest | $42,500 | |
| | Late Fees | $150 | |
| Pickard | Principal | $10,000 | $12,650 |
| | Interest | $2,500 | |
| | Late Fees | $150 | |
| Richardson | Principal | $10,000 | $12,650 |
| | Interest | $2,500 | |
| | Late Fees | $150 | |
| Palmer | Principal | $20,000 | $25,150 |
| | Interest | $5,000 | |
| | Late Fees | $150 | |
| Fleeks | Principal | $5,000 | $6,400 |
| | Interest | $1,250 | |
| | Late Fees | $150 | |
| Smith | Principal | $6,000 | $7,650 |
| | Interest | $1,500 | |
| | Late Fees | $150 | |
| Justin Miller | Principal | $27,000 | $33,900 |
| | Interest | $6,750 | |
| | Late Fees | $150 | |
| Ryan Magwood | Principal | $16,000 | $20,200 |
| | Interest | $3,750 | |
| | Late Fees | $450 | |
| Channel Miller | Principal | $5,000 | $6,400 |
| | Interest | $1,250 | |
| | Late Fees | $150 | |
| TOTAL | | | $375,300 |

### B. Procedural History

On April 1, 2022, Bostic filed suit alleging breach of contract (Count 1), fraudulent misrepresentation and inducement (Count 2), unjust enrichment (Count 3), fraud, in violation of FLA. STAT. § 517.301(1)(a)(c) (Count 4), and civil theft (Count 5).

After discovery, the parties cross-moved for summary judgment. The district court entered summary judgment in Bodie's favor on Bostic's breach-of-contract claim (Count 1) because the interest rates on each of the loans the parties executed qualified as usury under Florida law, so those loans were void and unenforceable. But as relevant to this appeal, the district court granted summary judgment in Bostic's favor as to fraudulent misrepresentation and inducement (Count 2), unjust enrichment (Count 3), and civil theft (Count 5).

In assessing Bostic's civil-theft and fraudulent-misrepresentation claims, the district court found no genuine dispute of fact as to Bodie's intent to defraud Bostic and the Assignors. It based this conclusion on the circumstance that, although Bodie represented that he would invest their money in Paris-Pinder's scheme, Bodie used Bostic and the Assignors' funds to conduct what the district court found to be Bodie's own *Ponzi* scheme.

The district court also determined that Bostic established the conversion elements of a civil-theft claim. The court so concluded because it found that the undisputed evidence proved Bodie deviated from the specific purpose for which Bostic and the Assignors wired money to Bodie: investing in personal-injury settlements.

As for the unjust-enrichment claim, the district court found that Bostic and the Assignors established all elements: they conferred a benefit upon Bodie by transferring him their investments, Bodie accepted and currently retains those funds, and it would be inequitable to retain the benefit without compensating Bostic and the Assignors. And the court rejected Bodie's unclean-hands defense because Bodie could not show the Business Loan Agreements injured him.

Based on these rulings, the district court entered an $897,000 judgment in Bostic's favor, trebling the $299,000 Bodie owed, under Florida's civil-theft statute, FLA. STAT. § 772.11. After the district court denied Bodie's motion for reconsideration, Bodie timely appealed.

## II.    STANDARDS OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue of fact is genuine if a reasonable trier of fact could return judgment for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it "might affect the outcome of the suit under the governing law" and is not "irrelevant or unnecessary." *Id.*

On appeal, we review de novo a district court's grant of summary judgment, construing all evidence in the light most favorable to the non-moving party. *Henry v. Sheriff of Tuscaloosa Cnty.*, ___ F.4th ___, 2025 WL 1177671, *7 (11th Cir. 2025).

## III.    DISCUSSION

Bodie makes four arguments on appeal.

His first two challenge the district court's entry of summary judgment on Bostic's civil-theft claim. First, Bodie contends there is a genuine dispute of material fact as to whether he had the intent necessary to sustain a claim for civil theft. And second, he disputes that the Business Loan Agreements can give rise to a civil-theft claim because they do not direct the loaned money to be used for a specific purpose.

Bodie's last two arguments challenge the remaining counts on which the district court entered summary judgment. Third, Bodie argues that a genuine dispute of material fact exists on his unclean-hands defense to Bostic's unjust-enrichment claim. And fourth, Bodie insists that the record contains several disputes of fact on Bostic's fraudulent-misrepresentation claim, including whether Bodie intended to defraud Bostic and the Assignors and whether the Assignors relied on any of Bodie's misrepresentations, given that he never spoke to them.

For the reasons we explain in the next sections, we affirm the district court's grant of summary judgment on Bostic's unjust-enrichment claim and reverse its grant of summary judgment on his civil-theft and fraudulent-misrepresentation claims. But to sum up, first, a genuine dispute of material fact exists as to whether Bodie intended to steal Bostic's and the Assignor's funds when he entered into the Business Loan Agreements with them. Second, Bostic's civil-theft claim is an inappropriate vehicle for recovering allegedly

misused or misappropriated money obtained through debt that any payment of funds will satisfy. Third, there's no reasonable dispute that Bostic and the Assignors have clean hands, so equity requires that Bodie repay the funds he has retained. Fourth, and finally, a genuine dispute of material fact exists as to the parties' mental state: a jury could find that Bodie did not intend to defraud Bostic and the Assignors or that the Assignors relied on Bostic's, not Bodie's, representations about the Business Loan Agreements.

### A. *The district court erred in entering summary judgment on Bostic's civil-theft claim.*

Under Florida law, a "claim for civil theft is conversion plus felonious intent." *Batista v. Rodriguez*, 388 So. 3d 1098, 1102 (Fla. 3rd DCA 2024). The civil-theft cause of action imposes treble damages on defendants who convert another's property with the requisite "criminal intent." *Bertoglio v. Am. Sav. & Loan Ass'n of Fla.*, 491 So. 2d 1216, 1217 (Fla. 3rd DCA 1986). That "criminal intent" element requires the plaintiff to prove "that the defendant had, prior to the commission of the act, an intent to commit a theft." *Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3rd DCA 1986); *see Utah Power Sys., LLC v. Big Dog II, LLC*, 352 So. 3d 504, 509 (Fla. 1st DCA 2022) (holding there must be an intent to steal to prove civil theft). And a plaintiff must prove that intent "by clear and convincing evidence." *Transcapital Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856, 864 (Fla. 4th DCA 2017) (quoting *Westinghouse Elec. Corp. v. Shuler Bros., Inc.*, 590 So. 2d 986, 988 (Fla. 4th DCA 1991)).

Based on these premises, Bodie argues the district court erred in granting summary judgment on Bostic's civil-theft claim for two reasons. First, he asserts that a genuine dispute of material fact remains over whether he acted with the necessary intent because he says he didn't intend to steal Bostic's and the Assignors' investments. In Bodie's view, he is just as much a victim of Paris-Pinder as Bostic and the Assignors are. And second, he contends he did not convert the funds that Bostic and the Assignors delivered to him under the Business Loan Agreements because the agreements did not require him to segregate the funds or direct them for a specific purpose.

We agree with both of Bodie's arguments. And because we do, we conclude that the district court erred in entering summary judgment on Bostic's civil-theft claim.

To put a finer point on the facts Bostic must prove, a defendant commits a theft if he knowingly obtains or uses the plaintiff's property either with (a) the intent to, temporarily or permanently, deprive the plaintiff of a right to or benefit of the property, or with (b) the intent to appropriate the property to his own or another's use. FLA. STAT. § 812.014(1). So Bostic must show that (a) when Bodie obtained the $299,000, he never intended to return it to Bostic and the Assignors, (b) when Bostic misused the $299,000, he never intended to return it to Bostic and the Assignors, or (c) that Bodie intentionally used Bostic's and the Assignors' money for his own benefit. And at the summary-judgment stage, he must

establish that no reasonable jury could conclude otherwise. *Anderson*, 477 U.S. at 248.

As for the first route—that Bodie intended to deprive Bostic and the Assignors of their property when he obtained it—Bostic has not shown that summary judgment would be appropriate on this record. We start from the premise that summary judgment "is rarely proper" when the relevant issue turns on "circumstantial evidence of intent and knowledge." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029 (11th Cir. 2017) (quoting *Coastal Inv. Properties, Ltd. v. Weber Holdings, LLC*, 930 So. 2d 833, 834 (Fla. 4th DCA 2006)); *see Campbell v. Riggs*, 310 So. 3d 68, 70 (Fla. 4th DCA 2021) ("Summary judgment would be inappropriate in a civil theft action because of the necessity of finding intent, which should normally be resolved by the finder of fact.").

That's so because factual findings about a person's state of mind usually "must be inferred from the things he says or does." *Am. Commc'ns Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950). And those inferences "turn[] in large part on the credibility and demeanor of witnesses"—determinations "peculiarly within the province of the jury." *United States v. Erdman*, 953 F.2d 387, 391 (8th Cir. 1992) (quoting *United States v. Long*, 952 F.2d 1520, 1525 (8th Cir. 1991)); *accord United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004).

Bodie testified in his deposition that he intended to repay Bostic and the Assignors, that he thought Paris-Pidner's investments were legitimate, and that he accepted Bostic's and the

Assignors' funds because he believed that Paris-Pinder would repay him. And Bostic admitted in the district court that Bodie would not have invested with Paris-Pinder if Bodie knew Paris-Pinder was running an illegal *Ponzi* scheme. A jury could credit that story and conclude that Bodie never intended to steal Bostic's and the Assignors' funds. So an entry of summary judgment on Bostic's civil-theft claim was inappropriate.

Bostic's argument that Bodie planned to retain some profits Paris-Pinder remitted does not alter our conclusion. That Bodie planned to retain some profits Paris-Pinder would have returned to him does not necessarily render him liable for civil theft. Bostic and the Assignors sent Bodie money on the understanding that they would receive a specified rate of return, albeit one they did not know was lower than what Paris-Pinder guaranteed. Bodie's profit-seeking motives could enable a jury to conclude that he intended to keep all the $299,000, plus interest, for himself. But a jury could also reasonably conclude that Bodie sought to generate a profit while also repaying Bostic and the Assignors the sum that the Business Loan Agreements specified. So although it is undisputed that Bodie intended to make money through his dealings, that does not compel the conclusion that Bodie acted with an intent to steal.

As for the second and third ways that Bostic can prove his civil-theft claim—that Bodie intentionally used Bostic's and the Assignors' money for his own benefit or with the intent not to return it (or both)—the record doesn't establish that, either. To be sure, it is undisputed that Bodie acted for his own benefit. Indeed, Bodie

ran out of money to repay Bostic and the Assignors because he paid off debts to other investors. The issue for Bostic, though, is that, that conduct did not "[mis]use[]" or "[a]ppropriate" Bostic's and the Assignors' "property" under Florida law. *See* FLA. STAT. § 812.014(1)(a)–(b).

"It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3rd DCA 2008). Of course, that doesn't mean civil theft may never lie for misuse of money. But the funds at issue must be "specific money capable of identification," meaning "there must be an obligation to keep intact or deliver the specific money in question." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970).

The easiest cases of monetary conversion occur when one must hold specific funds in escrow, *see, e.g.*, *Masvidal v. Ochoa*, 505 So. 2d 555, 556 (Fla. 3d DCA 1987), like when a bank receives accrued interest "in a fiduciary capacity under specific instructions" on how to deliver the interest, *Aero Int'l Corp. v. Fla. Nat. Bank of Miami*, 437 So. 2d 156, 159 (Fla. 3rd DCA 1983), or where deposits are "to be held intact and released only upon written confirmation by the" owner, *Eagle v. Benefield-Chappell, Inc.*, 476 So. 2d 716, 718 (Fla. 4th DCA 1985). The same goes for a bank account when joint tenants have a right to a certain and definitive percentage of the money in the account. *See, e.g.*, *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006). Florida courts have also sanctioned

conversion claims when a person misdelivered money sealed in an addressed envelope. *S. Exp. Co. v. Van Meter*, 17 Fla. 783, 803–04 (1880).

The point is that the debtor or bailee of the putatively converted funds used them "in a way . . . expressly contrary to the debtor's specific instructions and thereafter . . . refuse[d] return of the funds upon the debtor's demand." *All Cargo Transp., Inc. v. Fla. E. Coast Ry. Co.*, 355 So. 2d 178, 179 (Fla. 3rd DCA 1978).

By contrast, Florida law does "not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally." *Belford Trucking*, 243 So. 2d at 648. So when a party deposits money into an unsegregated account, and "the defendant is not required to pay the plaintiff identical moneys which he collected, there can be no action in tort for conversion"—a "mere obligation to pay money may not be enforced by a conversion action." *Id.*; *see, e.g.*, *Rosen*, 486 So. 2d at 625 (concluding money was not identifiable because it was in a joint bank account and both parties had the right to control the funds); *Fla. Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002) (rejecting a civil-theft claim because "the funds received . . . were unsegregated and were placed in a general operating account" and because there was no "obligation . . . to keep intact or hold a specific fund to deliver to Florida Desk").

We can see how this principle works in *Gasparini*. The Third District Court of Appeal rejected a civil-theft allegation where Vitala, S.A., paid $300,000 to International Trading for the

procurement of a letter of credit. *Gasparini*, 972 So. 2d at 1054. The court explained that, despite the discrete payment for a clear purpose, "the parties did not contemplate that International Trading would keep the $300,000 in a separate account" or "hold the funds that it received from Vitala, S.A. in a trust or escrow account." *Id.*

The First District Court of Appeal reached the same result in *Futch v. Head*. There, the defendant agreed to pay the plaintiff a commission if a particular property was sold. 511 So. 2d 314, 320 (Fla. 1st DCA 1987). Although the defendant had an obligation to pay the plaintiff, the court noted, she did not have an obligation to pay the plaintiff the specific funds earned from the property sale. *Id.* at 320–21. Indeed, neither party "contemplated that a specific sum of money, once delivered to [the defendant], should be kept immutable and inviolate." *Id.* at 321. Rather, the court explained, the defendant "merely owed a debt" to the plaintiff "which could be discharged by the payment of money in general and as such was not the proper basis for conversion." *Id.*

The facts here are similar to those of *Gasparini* and *Futch*, where Florida courts have rejected civil-theft and conversion actions. They are not like the facts of cases like *Masvidal* or *Aero International*, where Florida courts have permitted such claims.

Under the terms of the Business Loan Agreements, Bodie owed Bostic and the Assignors a specified sum at a date certain. The agreements did not require Bodie to hold their funds in a particular account. *Gasparini*, 972 So. 2d at 1054; *contra Masvidal*, 505

So. 2d at 556. And although Bostic and the Assignors entered into the agreements on the understanding that Bodie would invest their funds into Paris-Pinder's scheme, the contracts did not require Bodie to use their specific funds to invest in Paris-Pinder's scheme and then remit their specific proceeds returned from the scheme. *Futch*, 511 So. 2d at 320–21; *contra Aero Int'l*, 437 So. 2d at 159.

Nor does "[t]he fact that" Bostic and the Assignors sent Bodie a "certain" "amount . . . make an 'identifiable fund'" within the scope of Bostic's civil-theft claim. *Fla. Desk*, 817 So. 2d at 1061. Bodie could have satisfied his obligations under the Business Loan Agreements simply by paying Bostic and the Assignors the principal plus interest on the agreed-upon date. And that makes conversion and civil theft—proceeding under a theory of appropriation or misuse—improper remedies for Bodie's alleged wrong. *See Belford Trucking*, 243 So. 2d at 648. To be clear, our conclusion does not sanction Bodie's conduct; it merely recognizes that, under Florida law, the legal claim for civil theft is not the proper vehicle for redressing the alleged wrongs.

For these reasons, we conclude the district court erred in granting summary judgment in Bostic's favor on his civil-theft claim.

Before we move on, though, we note haven't seen a case where a Florida court has parsed the civil-theft statute as we now do. Most appear to apply the civil-theft and conversion torts' common-law principles. But for two reasons, we conclude that Florida courts would readily approve of the distinction we draw between

obtaining another's money with an intent to deprive them of it, which is actionable for civil theft, and misusing or misappropriating another's money, which may not be actionable for civil theft.

First, the distinction we've explained faithfully enforces the statute's text and structure. Once money is in another's hands because of a generalized monetary debt, the principle that such money is no longer the creditor's "property" applies, whether the action is "[mis]use[]," FLA. STAT. § 812.014(1), or "[mis][a]ppropriat[ion]," *id*. § 812.014(1)(b). By contrast, one who obtains another's money with an intent to deprive them of it is, in fact, stealing their property because the putative victim has an interest in the specific funds at the time of the theft—that is, the time the alleged tortfeasor obtains another's property. *See id*. § 812.014(1)(a). And, second, our distinction harmonizes Florida's rule that monetary debts are generally not actionable for conversion or civil theft, *Gasparini*, 972 So. 2d at 1055, with its recognition that a civil-theft claim is appropriate where there is "an elaborate scheme to steal" money from others, *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000) (concluding a reasonable jury could find civil theft where one forged signatures on checks and deposited them into his account).

So on remand, Bostic may proceed on his civil-theft claim by proving that Bodie "obtain[ed]" or "endeavor[ed] to obtain" Bostic's and the Assignors' money with an "intent to . . . [d]eprive" them of the "right to" that money. FLA. STAT. § 812.014(1)(a).

### B.  *The district court did not err in entering summary judgment on Bostic's unjust-enrichment claim.*

Bodie next argues that the district court erred in entering summary judgment on Bostic's unjust-enrichment claim because a genuine dispute of material fact remains as to Bodie's unclean-hands defense.  As a reminder, the district court rejected Bodie's argument because, even if Bostic and the Assignors had unclean hands, Bodie has not shown "that he was injured" by Bostic's and the Assignors' allegedly inequitable conduct.  *McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. 4th DCA 2002).  We agree.

Unjust enrichment enables recovery "where it is deemed unjust for one party to have received a benefit without having to pay compensation for it."  *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999); *accord Dooley v. Gary the Carpenter Constr., Inc.*, 388 So. 3d 881, 883 (Fla. 3rd DCA 2023).  To state such a claim, a plaintiff must prove three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) it would be inequitable for the defendant to retain the benefit without compensating the plaintiff.  *Tooltrend*, 198 F.3d at 805 (quoting *Greenfield v. Manor Care, Inc.*, 705 So. 2d 926, 930–31 (Fla. 4th DCA 1997), *rev. denied*, 717 So. 2d 534 (Fla. 1998)).

Bodie does not dispute the first two elements of Bostic's unjust-enrichment claim.  Nor could he.  Bostic and the Assignors transferred $299,000 to Bodie, and Bodie has not returned that sum to them.  Rather, Bodie argues, based on his unclean-hands defense,

that equity does not require that he return the funds. We see no fact in the record that could sustain such a position.

Functionally, there is no reasonable dispute that equity requires Bodie to return the funds to Bostic and the Assignors: he has no right to those funds. Bodie seizes on the district court's musing that "both sides of the case could be accused of having unclean hands" for "entering usurious contracts." But the facts here belie the notion that the high interest rates in the Business Loan Agreements resulted from some inequitable or deceitful misconduct on Bostic's and the Assignors' part—just the opposite: Bodie proposed them.

And, formally, to state an unclean-hands defense, Bodie must show "that he was injured" by Bostic's and the Assignors' allegedly inequitable conduct. *McCollem*, 832 So. 2d at 196. But we cannot see how the Business Loan Agreements injured Bodie. He proposed them and used them to accumulate funds. That Bodie then misused those funds and incurred a substantial debt to many is an injury of his own making. Plus, as the district court held, the Business Loan Agreements are void as usurious contracts. So the agreements impose no legal obligation on Bodie that injures him. As a result, no genuine dispute of material fact exists on his unclean-hands defense.

For these reasons, we conclude the district court did not err in granting Bostic's motion for summary judgment on his unjust-enrichment claim.

### C. The district court erred in entering summary judgment on Bostic's fraudulent-misrepresentation claim.

Finally, Bodie argues the district court erred in entering summary judgment on Bostic's fraudulent-misrepresentation claim. To prove fraudulent misrepresentation under Florida law, a plaintiff must establish these elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 3 F.4th 1339, 1349 (11th Cir. 2021) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

The crux of Bostic's claim is that Bodie represented that he and the Assignors would invest in a business deal—that is, the Paris-Pinder personal-injury-settlement scheme—not a loan that Bodie would use to satisfy his other obligations. Had Bostic and the Assignors known that Bodie would use their funds to satisfy other obligations, they contend, they wouldn't have entered into the Business Loan Agreements.

Bodie disputes several factual premises underlying Bostic's claim. He argues that he always intended to invest in Paris-Pinder's scheme, so he never knowingly misrepresented any facts to Bostic or the Assignors. And he contends that a jury could find that the Assignors did not rely on his representations about Paris-Pinder's scheme.

We agree with both of Bodie's arguments.

First, a genuine dispute of fact exists over whether Bodie knowingly made any false statements to Bostic and the Assignors. Bostic's fraud claim depends on the premise that when Bodie represented to Bostic, and thereby the Assignors, that he would invest their funds in Paris-Pinder's scheme, he never intended to do so. *See id.* (requiring proof that the representor knew his representations were false).

But as we've discussed, a reasonable jury could conclude that Bodie intended to follow through on his representations to Bostic and the Assignors. Although Paris-Pinder stopped paying Bodie shortly before the Assignors invested, we know that to be the case only in hindsight. At the time, Bodie claims, no red flags suggested that Paris-Pinder's scheme was unraveling. Of course, that fact, as well as Bodie's decision to use Bostic's and the Assignors' funds to repay other debts, could allow a jury to conclude Bodie committed fraud. *See, e.g.*, *United States v. Hurley*, 755 F.2d 788, 790 (11th Cir. 1985) ("A subsequent act, as well as a prior act, can be used to show intent under Rule 404(b)."). But the facts do not compel such a finding. So the jury must resolve the factual questions relating to Bodie's mental state.

And second, there's a genuine dispute of fact over whether the Assignors relied on Bodie's representations about Paris-Pinder's personal-injury scheme. To be sure, Bostic is correct that the mere fact that Bodie did not speak to the Assignors does not preclude a fraud claim. *Harrell v. Branson*, 344 So. 2d 604, 606 (Fla. 1st DCA 1977). But the record suggests that something may have been lost

in translation. For instance, the Way of Yah's corporate representative testified that it thought Bodie, not Paris-Pinder, had a relationship with the personal-injury attorneys who were generating the funds to satisfy the Business Loan Agreements. The same deponent added that the Way of Yah and the other Assignors (its congregants) were "willing to do" the deal with Bodie because Bostic "had done a deal with him" and "received . . . the profits back from it." So construing the facts in the light most favorable to Bodie, it's possible the Assignors executed the Business Loan Agreements with Bodie only because they trusted Bostic and his representations that Bodie would repay them and not because of any representations Bodie made to the Assignors through Bostic.

In short, with respect to Bostic's fraudulent-misrepresentation claim, the jury must resolve the factual disputes relating to the parties' mental state—in particular, whether Bodie intended to defraud and whether the Assignors subjectively relied on Bodie's representations.

## IV.    CONCLUSION

For all these reasons, we affirm the district court's grant of summary judgment on Bostic's unjust-enrichment claim, reverse its grant of summary judgment on Bostic's civil-theft and fraudulent-misrepresentation claims, vacate its judgment, and remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED IN PART.**